**Walter D. SPENCE,**
**Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–279A36.**

Court of Appeals of Indiana.

Sept. 10, 1979.

Stephen R. Goot, Hammond, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Richard E. Webster, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

HOFFMAN, Judge.

Defendant-appellant Walter D. Spence was found guilty of assault and battery[1] and cruelty and neglect of children[2] following a trial by jury in Lake Superior Court, Criminal Division.

His appeal raises three issues for review:[3]

(1) whether the trial court erred in admitting into evidence the transcript of the testimony of Victoria Danae Spence in a prior civil proceeding;

(2) whether the trial court erred in denying his motion for a continuance made the day of trial; and

(3) whether the trial court erred in permitting a State's witness to give his opinion as to the cause of Victoria's injury.

The judgment is affirmed.

### Issue I.

On the night of June 7, 1977, Victoria Danae Spence and her father, the defendant, argued at their home. Later that evening, the police and an ambulance went to the home and an emergency medical technician dressed wounds to both Danae and the defendant. The next day, Spence took Danae to the hospital and extensive surgery was performed on her injury which was in the palm of her right hand.

After her release from the hospital, Danae stayed with her father at their home until on or about July 20, 1977, when she called the Department of Public Welfare and told a welfare worker that she had run away from home because her father had beaten her with a lug wrench. After an overnight stay at the Lake County Children's Home, Danae was placed in a foster home.

On or about July 26, 1977, the cause of "In the Matter of Victoria Danae Spence and Ruby Carol Spence" was filed in Lake

---

1. IC 1971, 35–1–54–4 (1978 Burns Supp.). This section was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. For current law, see IC 1971, 35–42–2–1 (Burns 1979 Repl.).

2. IC 1971, 35–14–1–4 (1978 Burns Supp.). This section was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. For current law, see IC 1971, 35–46–1–4 (Burns 1979 Repl.).

3. Appellant attempted to raise two additional issues, whether the trial court erred in admitting the testimony of Ruby Carol Spence and whether the verdict was supported by sufficient evidence on the element of intent, but he has waived these contentions by failure to cite any authority. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

Superior Court, Juvenile Division. The Lake County Department of Public Welfare sought wardship over the two girls on the grounds that they were dependent and neglected. Included in the Department's petition was a paragraph which read, in part, as follows:

"That said child [Danae] was admitted to St. Margaret's Hospital on 6–7–77 for a wound to her right hand. Upon admittance to hospital Danae out of fear stated that she fell on a piece of glass. However, Danae had told friends that her father had come after her with a knife. On 7–20–77 Danae stated to worker that she had been attacked by her father."

On October 5, 1977, a probable cause affidavit was filed in Lake Superior Court, Criminal Division, and a warrant was issued for Spence's arrest on the charges of assault and battery with intent to kill and cruelty and neglect of children. On or about October 11, 1977, Spence was arrested on these charges.

On October 14, 1977, Danae testified in the civil cause, "In the Matter of Victoria Danae Spence and Ruby Carol Spence," before Juvenile Division Referee David M. Moore, her testimony transcribed by the court reporter of the Lake Superior Court, Juvenile Division.

Trial by jury in the case at bar was begun on September 12, 1978, by which time Danae was unavailable as a witness, having died on December 12, 1977. The State placed into evidence at the criminal proceeding against Spence the transcript of the testimony given by his late daughter in the prior civil proceeding.

Spence argues the admission into evidence of this prior testimony was error because it violated his constitutional right to be confronted with the witnesses against him under the Sixth Amendment to the United States Constitution as made applicable to the states by the Fourteenth Amendment. He concedes that prior testimony is sometimes admissible if the witness is no longer available, but only if the issues involved in the prior proceeding are similar enough to the issues in the present proceeding to permit effective cross-examination and if the interests and motives of the parties in the prior proceeding are substantially the same as those in the present proceeding.

In *Mattox v. United States* (1895), 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409, the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment was not violated by the admission into evidence at the defendant's second trial for murder of a verified copy of the court reporter's stenographic notes of the testimony of a witness for the prosecution at a prior trial on the same charge, the witness having died in the interim between the two proceedings.

The Court said in 156 U.S. at 242–244, 15 S.Ct. at 339–40.

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards even by the death of the witness; and that, if notes of his testimony are permitted to be read, he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. To say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot free simply because death has closed

the mouth of that witness, would be carrying his constitutional protection to an unwarrantable extent. The law, in its wisdom, declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.

"We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizens, but as securing to every individual such as he already possessed as a British subject,—such as his ancestors had inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a Bill of Rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant. . . .

"The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. This, the law says, he shall under no circumstances be deprived of, . . ."

In *California v. Green* (1970), 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489, the Court approved the admission as substantive evidence at trial of a statement made by a witness at a preliminary hearing who became uncooperative at trial and claimed a failure of memory. The Court said in 399 U.S. at 165–166, 90 S.Ct. at 1938–39:

"We also think that Porter's preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial.

Porter was under oath; respondent was represented by counsel—the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him. . . .

"This Court long ago held that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause. *Mattox v. United States*, 156 U.S. 237, [15 S.Ct. 337, 39 L.Ed. 409] (1895). That case involved testimony given at the defendant's first trial by a witness who had died by the time of the second trial, but we do not find the instant preliminary hearing significantly different from an actual trial to warrant distinguishing the two cases for purposes of the Confrontation Clause. . . .

In the present case respondent's counsel does not appear to have been significantly limited in any way in the scope or nature of his cross-examination of the witness Porter at the preliminary hearing. If Porter had died or was otherwise unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing—the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement, as long as the defendant's inability to give live testimony is in no way the fault of the State."

*See: Stearsman, Peak, Carter v. State* (1957), 237 Ind. 149, 143 N.E.2d 81.

Thus, the crux of the constitutional guarantee under the Confrontation Clause, according to *Mattox* and *Green*, is whether the witness was under oath at the prior proceeding, whether the defendant was represented by counsel at the prior proceeding, whether the prior proceeding was conduct-

ed before a judicial tribunal equipped to provide a judicial record, and whether the defendant had every opportunity to cross-examine the witness as to his statement. *Phillips v. Wyrick* (8th Cir., 1977), 558 F.2d 489.

In the case at bar, all four criteria were met in the prior proceeding. Danae was under oath; Spence was represented by counsel, the same attorney who represented him at the subsequent criminal proceeding; the proceeding was before a judicial tribunal, a referee of the Juvenile Division of Lake Superior Court which is a court of record, and the official court reporter took stenographic notes of Danae's testimony which she later transcribed; and Spence's attorney cross-examined Danae, specifically attacking her testimony about the June 7, 1977 incident and the circumstances surrounding it.

Spence argues that the fact that the prior proceeding was civil in nature should preclude the use of testimony from that proceeding in the subsequent criminal proceeding. He offers no authority to support this argument, however, and this Court cannot see why, under the facts of this case, this consideration should be material let alone dispositive.

■ The critical determination to be made is whether there was sufficient identity of parties and issues between the former and present proceedings.

Nabbefeld v. State (1978), 83 Wis.2d 515, 266 N.W.2d 292; Hicks Co., Inc. v. C.I.R. (1st Cir., 1972), 470 F.2d 87.

Absolute identity is not required, only sufficient identity to insure that cross-examination in the former case was directed to the issues presently relevant and that the former parties were the same in motive and interest. *Hicks Co., Inc., supra.*

The identity of the parties was sufficient. Spence was the defendant in the present proceeding, and his position in the prior proceeding was a defensive one in that he was summoned before the trial court to aid that court in its determination of whether the allegations of the Welfare Department's petition were true, one such allega-

tion being that he had attacked Danae with a knife on June 7, 1977. The plaintiff in the prior proceeding was the Lake County Department of Public Welfare, an administrative arm of the State, IC 1971, 12–1–2–3 and 12–1–3–4 (Burns Code Ed.); the plaintiff in the present proceeding was the State.

The identity of the issues was also sufficient. In the prior proceeding one of the issues was whether custody of Danae should be taken from Spence because he had neglected and been cruel to her. In the present proceeding, the issues were whether Spence had assaulted and battered Danae with the intent to kill on June 7, 1977, and whether he was guilty of cruelty to and neglect of Danae. In the prior proceeding it was in Spence's interest to attack the credibility of Danae's testimony especially as it related to the June 7, 1977 incident, in order to retain custody of his children. He was also aware at the time of the prior proceeding that the criminal charges in the case at bar had been brought against him and that whether he was convicted in any subsequent criminal proceeding on these charges might depend in great measure on the credibility of Danae's testimony.

■ This Court holds that the substance of the protection guaranteed by the Confrontation Clause was preserved to Spence in the advantage he once had in seeing the witness face to face and in subjecting her to the ordeal of cross-examination. Under the facts of the case at bar, the trial court did not err in admitting into evidence a subsequent criminal proceeding the transcript of testimony given in a prior civil proceeding by a witness who died in the interim period.

### Issue II.

Spence contends the trial court committed reversible error when it denied his motion for a continuance made the day of trial, September 12, 1978. According to Spence's brief to this Court and his motion to correct errors, the basis for the motion was the trial court's denial on September 11, 1978, after the selection of the jury, of

Spence's motion in limine filed on or about March 16, 1978. The motion in limine had requested the trial court to instruct the State "not to mention, refer to or use as evidence or attempt to convey to the jury in any manner, either directly or indirectly" the testimony of Danae at the prior proceeding. He contends that this delay in ruling on his motion in limine made it impossible for him to develop his trial strategy and thus rendered his opportunity to prepare for trial inadequate, and that with a continuance he could have "collected more evidence."

■ In *Simpson v. State* (1978), Ind., 381 N.E.2d 1229, at 1233, the Indiana Supreme Court said:

"A Motion for Continuance based on a non-statutory ground is addressed to the discretion of the trial court. [Citation omitted.] Since appellant's motion was based on an alleged need to have more time for trial preparation, it was such a request directed to the trial court's discretion."

In order to demonstrate an abuse of this discretion, the record must reveal that the defendant was prejudiced by the failure to grant the continuance. *Butler v. State* (1978), Ind.App., 372 N.E.2d 190.

■ It was incumbent upon trial counsel to anticipate either possible ruling on his motion and to prepare for trial in either eventuality. Given the fact that Spence's daughter, Ruby, was prepared to testify, as she did, that, on June 7, 1977, she saw Spence throw some dishes at Danae and go at her with a knife while Danae tried to protect herself, Spence had ample warning that he should collect all available evidence in his behalf and prepare his strongest defense regardless of the trial court's ruling on his motion. Spence has failed to demonstrate any prejudice resulting from the trial court's denial of his motion for a continuance and so has shown no error.

### Issue III.

Spence's final allegation of error is that the trial court erred in permitting the emergency medical technician who treated Da-

nae's wound to testify as to the cause of the injury. Since Spence maintained throughout the trial that Danae had cut her hand on broken glass while turning cartwheels in the yard, he contends the matter before the court required the technician to be able to distinguish between an injury caused by a knife and one caused by broken glass. He argues, therefore, that although the technician testified that he had seen numerous knife wounds in the course of his employment, there was no evidence that he had ever seen a wound caused by broken glass.

Spence has incorrectly reviewed the record of the proceedings as to the content of the technician's testimony. He testified that he had seen both knife and glass wounds, "probably a hundred" knife wounds and "hundreds or more" wounds caused by other instruments such as glass.

■ A witness exhibiting such a degree of knowledge gained from experience as to make it appear that his opinion is of some value is entitled to testify, and the trial court, in the exercise of sound discretion, can say when such knowledge is shown, and the jury can determine what the opinion is worth. *Illinois Steel Company v. Fuller* (1939), 216 Ind. 180, 23 N.E.2d 259. The qualification of a witness to testify as an expert is for the determination of the trial court, whose decision will be set aside only where there is shown an abuse of discretion. *State v. Vaughan et ux.* (1962), 243 Ind. 221, 184 N.E.2d 143. The defendant has failed to show any abuse of discretion in the admission of the technician's opinion as to the cause of the wound.

The judgment of the trial court is affirmed.

Affirmed.

GARRARD, P. J., and STATON, J., concur with opinion.

STATON, Judge, concurring.

I concur with the majority opinion, but I do not agree that Spence waived the issue of "whether the verdict was supported by sufficient evidence on the element of in-

tent." This waiver is referred to by the majority opinion at footnote 3.

The admission of Danae's testimony and that of her sister, Ruby, was sufficient to establish the element of intent. Furthermore, the intent could be inferred from the use of a deadly weapon. I would not require the citation of legal authority for such an evidentiary argument before considering the merits of the argument. As Judge Sullivan stated in *Colonial Life and Accident Insurance Co. v. Newman* (1972), 152 Ind. App. 554, 284 N.E.2d 137 at 141 (footnote 3), "Specification[s] such as here involved are particularly unsusceptible to binding or persuasive support in case law or textual treatment. Even the most naive law student is aware of the ease with which case authorities are properly distinguished upon their facts." (citing *McClure v. Austin* (1972), 152 Ind.App. 398, 283 N.E.2d 783, *quoting from Cheek v. Hamlin* (1972), 150 Ind.App. 681, 277 N.E.2d 620.)