James E. SMITH, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–782A163.

Court of Appeals of Indiana,
First District.

Aug. 2, 1983.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The defendant-appellant, James E. Smith, was tried and convicted of dealing in a Schedule I controlled substance [1] (LSD) in a jury trial in the Lawrence County Superior Court. Smith was subsequently sentenced to ten years and now appeals his conviction. We affirm.

## FACTS

On October 25, 1980, Officer Ronald Cogwell of the Indiana State Police and John Edwards, an investigator for the Lawrence County Prosecutor's Office, were meeting to discuss an ongoing investigation of illegal drug sales. During their meeting Cogwell received a telephone call from an informant who told Cogwell the defendant had agreed to sell him a quantity of LSD tablets.

The informant, Lowell Grubbs, was provided with the necessary money to make the purchase and was equipped with an electronic transmitter so Cogwell could listen to the conversation between Grubbs and Smith when the sale was made.

Grubbs proceeded to the agreed meeting place where Smith sold him a quantity of LSD tablets contained in a plastic bag. During the course of the sale, Officer Cogwell and Investigator Edwards observed from a distance and listened to the conversation by way of the transmitter.

Shortly after the sale, Grubbs presented the tablets to Cogwell who then locked them in an evidence drawer at the State Police Post in Bloomington, Indiana. Subsequently, George Abbott, the custodian of the evidence for the Bloomington Post, and the only individual with a key to the drawer, removed the plastic bag containing the tablets and mailed it to the State Police Post in Evansville for analysis.

At the Evansville laboratory, forensic chemist William Bowles conducted a chemi-

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

1. Indiana Code section 35-48-4-2 (Burns 1980).

cal analysis of the tablets which revealed they contained LSD.

Other relevant facts are stated in our discussion of the issues.

## ISSUES

Smith has presented two issues for our review.

1. Did the trial court's denial of Smith's motion for continuance violate his sixth amendment right to be represented by his counsel of choice?

2. Was there sufficient evidence of a proper chain of custody to warrant the admission of the LSD tablets into evidence?

## DISCUSSION AND DECISION

*Issue One*

Smith contends his rights under the Sixth Amendment of the United States Constitution[2] were violated when the trial court denied his motion for continuance. We disagree.

█ Generally, when viewing claims that the trial court erred in denying a motion for continuance based upon nonstatutory grounds,[3] we examine the record for an abuse of discretion. *Yager v. State,* (1982) Ind., 437 N.E.2d 454, 461; *Caccavallo v. State,* (1982) Ind., 436 N.E.2d 775, 777; *Johnson v. State,* (1979) 271 Ind. 145, 390 N.E.2d 1005, 1011, *cert. denied* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312. Such an abuse occurs when the record reveals the defendant was prejudiced by the denial. *Dorton v. State,* (1981) Ind., 419 N.E.2d 1289, 1295. Only upon such a finding will we reverse the trial court. *Brewer v. State,* (1981) Ind., 417 N.E.2d 889, 906.

In the present case, however, Smith does not premise his argument on an allegation that the trial court abused its discretion. Rather, he asserts the denial prevented him from being represented by his counsel of choice, thereby violating his sixth amendment rights. We agree Smith's sixth

amendment rights were implicated in the present case, *United States v. Burton,* (D.C. Cir.1978) 584 F.2d 485, 489, *cert. denied* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); however, we fail to find a violation of those rights.

Upon being arrested and charged with selling LSD, Smith engaged attorney David J. Colman to represent him. In the first trial of this matter Colman succeeded in having a mistrial declared.

Subsequently, on October 16, 1981, Smith was arraigned and a new trial date was set for December 8, 1981. Three days later the trial court issued its discovery order to the parties wherein it reiterated the December 8 trial date. Attorney Colman complied with the discovery order on November 24, but made no indication at that time of a scheduling conflict.

Finally, on December 1, Colman notified the court of a conflict. In his affidavit in support of a motion for continuance Colman alleged:

"Comes now the Defendant, James E. Smith, by counsel, David J. Colman, and moves for a continuance of the jury trial set for the 8th day of December, 1981, at 9:00 a.m., for the following reason:

1. Counsel for the Defendant has a previously set jury trial in the matter of State of Indiana v Everroad, et al, Cause # SCR–1791, Bartholomew Superior Court, which is set to begin on the 7th day of December, 1981, at 9:00 a.m., and is expected to last through the 11th day of December, 1981.

WHEREFORE, Defendant, by counsel, prays that this cause be continued and be re-set at a later date convenient to the Court."

Record at 33. The court, however, noted that Smith's trial had been set since October 16, and denied the motion. Thereafter, Colman made no further intercessions on behalf of Smith.

---

2. U.S. Const. amend. VI.

3. The various statutory grounds for a continuance are found at West's AIC section 35–1–26–1.

However, on December 8, attorney Guy Loftman, Colman's law partner, entered his appearance on behalf of Smith and requested a continuance. The basis of Loftman's motion was essentially threefold: (1) he was not as familiar with Smith's case as Colman and had had inadequate time to prepare; (2) Colman was better prepared to conduct Smith's defense; and (3) Colman was Smith's counsel of choice. In support of the motion Loftman offered the testimony of Smith in a hearing held by the trial court.

"Mr. Loftman: Did you choose David Colman to be your attorney?

"Mr. Smtih [sic]: Yes, I did.

"Mr. Loftman: When you chose David Colman to be your attorney, had you ever heard of me?

"Mr. Smith: No, I never.

"Mr. Loftman: Do you want David Colman to be your attorney in this trial?

"Mr. Smith: Yes, I do.

"Mr. Loftman: Do you object to me being your attorney at this time?

"Mr. Smith: Well, not to be knocking your ability or anything, but I would rather have David Colman.

"Mr. Loftman: In light of that, do you object to me being your attorney and want David to be your attorney?

"Mr. Smith: Yes."

Record at 115–16.

Following this hearing, the trial court took the motion under advisement and ordered the parties to proceed with jury selection. Upon completion of jury selection on December 8, the court determined Loftman had been given sufficient time to prepare for trial and ordered the parties to appear on December 14, for the commencement of trial. Smith was convicted on December 16.

In addressing Smith's claim of deprivation of his constitutional rights, we are mindful of the principles established under the sixth amendment. It is axiomatic that upon being charged with a crime a defendant is entitled to representation by counsel. U.S. Const. amend. VI; *Powell v. Alabama,* (1932) 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Ind. Const. art. 1, § 13; *Fitzgerald v. State,*

(1970) 254 Ind. 39, 45, 257 N.E.2d 305, 310. Indeed, this fundamental right has been held to be a "vital component in the scheme of due process and the keystone of an adversary system of criminal justice." *Gandy v. Alabama,* (5th Cir.1978) 569 F.2d 1318, 1320.

■ Furthermore, provided a defendant is financially able, he is entitled to the counsel of his choice. *Lindley v. State,* (1981) Ind., 426 N.E.2d 398, 400; *Fitzgerald,* 254 Ind. at 45 and 257 N.E.2d 310; *Burton,* at 489. However, the right to counsel of one's choice, unlike the underlying right to assistance of counsel, is not absolute. *Gandy,* 569 F.2d at 1323. As noted by the court in *Burton,* the right to counsel of choice cannot be insisted upon to the exclusion of all other interests. "The public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force." *Id.* 584 F.2d at 489.

■ Therefore, in determining whether Smith has been unconstitutionally denied the right to representation by his counsel of choice, we must engage in a balancing of the competing interests involved. *Linton v. Perini,* (6th Cir.1981) 656 F.2d 207, 209, *cert. denied* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982); *Burton,* 584 F.2d at 490–91; *Gandy,* 569 F.2d at 1324. Indeed, as our supreme court has held, only after a careful review of all the facts can we determine whether a defendant's sixth amendment rights have been violated by the refusal to grant a continuance to obtain counsel. *Vacendak v. State,* (1982) Ind., 431 N.E.2d 100, 105.

In applying such a balancing approach, we find the analysis utilized in *Linton* to be instructive. Therein, at the defendant's arraignment on charges of rape and kidnapping, held on May 8, 1978, the trial court set the matter for trial on May 18. The defendant's retained counsel, attorney Fanelly, because of prior obligations, requested the court to set an early June date instead. Fanelly's request was denied and he with-

drew. The court then instructed the defendant to obtain another attorney. But later that same day, upon the defendant's inability to do so, the court appointed counsel for him. *Id.* 656 F.2d at 208.

Following his conviction and appeal on the merits, the defendant petitioned the United States District Court for the Northern District of Ohio for a writ of habeas corpus on the grounds he had been denied representation by his counsel of choice in contravention of the sixth amendment. The petition was denied, but the Sixth Circuit Court of Appeals reversed stating:

"When a defendant's chosen counsel represents that he cannot meet a set trial date and requests a continuance, a trial court considering such a request must be sensitive to the defendant's right to counsel of his choice, as well as the public's interest in prompt and efficient administration of justice. If the court finds that the delay is an attempt to manipulate a trial, or causes prejudice to the prosecution, or creates difficulties for the trial court, the trial court may interfere with the defendant's right to counsel of his own choice and require the case to proceed. On the other hand, where the request is reasonable, where there have been no prior adjournments, where the length of delay is moderate, and where the adjournment seems to be for legitimate reasons, the court should allow a reasonable adjournment to permit a defendant to have retained counsel of his own choice.

This does not mean that a trial court cannot tightly control its own docket, or that its assignment of cases can be manipulated by defense counsel and defendant. A court must always keep control of its own docket, but in doing so it must be reasonable and consider the constitutional right of a defendant to have retained counsel of his choice."

*Id.* at 209.

Applying this analysis, the court concluded the defendant's sixth amendment rights had been violated by the trial court's refusal to grant attorney Fanelly more time to prepare. The court noted there had been no previous continuances, nor any evidence the requested continuance was part of a scheme to delay the proceedings. Moreover, the court found there was no showing made that a continuance would have caused inconvenience for the witnesses, the state, or the court. Finally, in light of the serious charges involved, the court viewed the denial of a continuance as unreasonable and arbitrary. *Id.* at 211.

In concluding the defendant's sixth amendment rights had been violated, the *Linton* court cited as authority the holding in *Burton.* Therein, when presented with very similar facts, the District of Columbia Circuit Court of Appeals articulated several key factors which should be considered in weighing the competing interests.

"What is a reasonable delay necessarily depends on all the surrounding facts and circumstances. Some of the factors to be considered in the balance include: the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case."

*Id.* 584 F.2d at 490–91 (footnotes omitted).

In applying this analysis, the court held the existence of prejudice to the defendant is not necessarily a prerequisite to a finding of a sixth amendment violation. Rather, the court stated it is but one factor to be

considered. *Id.* at 498. However, while we agree with the *Burton* court that prejudice to the defendant is only one of the factors to be considered, we are bound by our own supreme court's decision in *Vacendak,* 431 N.E.2d at 105, wherein it was held that a defendant must show prejudice to his cause to establish a sixth amendment violation.

■ In the present case, we find an application of the principles announced in *Linton, Burton,* and *Vacendak* lead to but one conclusion: Smith's constitutional right to representation by his counsel of choice was not abridged. Although there had been no previous requests for a continuance, there had been the delay necessitated by the earlier mistrial. Additionally, the trial court was satisfied, despite Loftman's protests to the contrary, that he was indeed prepared to assume Smith's defense. Moreover, in denying Colman's request for a continuance, the trial court noted it had set the December 8 trial date on October 16, and that despite Colman's claim the other trial had been set prior to Smith's he had made no effort to continue Smith's trial until December 1.

Furthermore, from a review of the record it is clear there was evidence before the trial court that the attempt to obtain a continuance and the substitution of Loftman as counsel was simply a ploy to delay Smith's trial. Upon Loftman's motion for a continuance, the trial court conducted a hearing in which both Loftman and Smith testified. In his testimony, Loftman conceded he was co-counsel with Colman in the case which caused Colman to be absent. While Loftman testified he never expected to try the other case, he failed to state whether either he or Colman was counsel of choice in that case. Thus, it was reasonable for the trial court to conclude that Loftman, as co-counsel, could have tried the other case, and thereby make Colman available for Smith's trial inasmuch as he was counsel of choice.

Viewed in this light, the trial court would have been justified in believing the actions of Colman and Loftman were merely part of a dilatory scheme to delay Smith's trial.

As the court stated in *Linton:* "If the court finds that the delay is an attempt to manipulate a trial . . . the trial court may interfere with the defendant's right to counsel of his own choice and require the case to proceed." *Id.* 656 F.2d at 209.

In addition to this reasonable inference, the trial court also found Loftman had adequate time to prepare for Smith's trial. Contrary to Loftman's testimony that he was unaware he would be forced to try Smith's case until December 4, the record clearly reflects the trial court denied Colman's motion for continuance on December 1. Moreover, following jury selection on December 8, the trial was adjourned, for reasons not stated in the record, until December 14, at which time the trial court expressly determined Loftman had been provided adequate preparation time. Thus, even taking Loftman's contention as true, the adjournment until December 14, provided him ten days to prepare for trial, sufficient in light of the facts in this case.

Finally, we fail to see how Colman's absence resulted in prejudice to Smith. Despite Loftman's protests that he was unprepared to defend Smith, our review of the record reveals he provided Smith with more than mere perfunctory representation. Thus, while Smith has failed to show prejudice to his cause as required by *Vacendak,* we agree with the *Burton* court that even absent this requirement Smith's inability to show prejudice, and its absence in the record, suggests the trial court balanced the competing interests properly. *Id.* 584 F.2d at 499.

We find no deprivation of Smith's sixth amendment rights.

*Issue Two*

Smith's second contention challenges the admission of the tablets and the corresponding testimony of state's witness William Bowles that the tablets contained LSD. Smith asserts the chain of custody was inadequate to permit the admission of the tablets and corresponding testimony. Smith is wrong.

The chain of custody requirement to which Smith alludes is simply an evidentiary rule requiring a proponent to lay a sufficient foundation linking the defendant with the proffered exhibit prior to its admission into evidence. *Graham v. State,* (1970) 253 Ind. 525, 531, 255 N.E.2d 652, 654. Essentially, as applied to cases such as the present one, there must be evidence of the whereabouts of the exhibit between the time it is confiscated from the defendant until it is analyzed to determine its composition. *Id.; Arnold v. State,* (1982) Ind., 436 N.E.2d 288, 291.

The purpose of the rule is to ensure that during the time the evidence is in the possession of law enforcement authorities there is no substitution or alteration of the evidence. *Johnson v. State,* (1977) 267 Ind. 415, 420–21, 370 N.E.2d 892, 894. Obviously, as in the present case, where the evidence is fungible in nature, the importance of establishing a proper chain of custody is greatly enhanced. However, the state need not exclude every remote possibility of tampering, but rather, need only show the exhibit has passed through the various hands involved in a relatively undisturbed fashion. *Stewart v. State,* (1982) Ind., 442 N.E.2d 1026, 1033; *Arnold,* at 436 N.E.2d 291; *Lewandowski v. State,* (1979) 271 Ind. 4, 11, 389 N.E.2d 706, 710–11.

Herein, following the purchase of the tablets from Smith, the informant presented them to Officer Cogwell. Cogwell, in turn, locked them in an evidence drawer at the Bloomington State Police Post.

Later, George Abbott, the only individual with a key to the drawer, removed the tablets and placed them in a sealed envelope addressed to the Evansville State Police Post for analysis by laboratory personnel. Abbott mailed the package via certified mail and received the return receipt on October 29, 1980.

Upon its arrival at the Evansville laboratory, the package was accepted by the evidence clerk. Thereafter, the laboratory manager presented the package to forensic chemist William Bowles. Bowles opened the envelope and removed the plastic bag containing the tablets. He then proceeded to remove several tablets for analysis. This analysis revealed the tablets contained LSD. Bowles then heat sealed the plastic bag, placed it back in the envelope, and locked it in a vault until he was required to produce it at Smith's trial.

Smith premises his chain of custody argument on the fact that neither the evidence clerk who received the package, nor the laboratory manager who presented it to Bowles, testified at his trial. Thus Smith submits, the continuous whereabouts of the tablets was not established. However, as the state has effectively argued, this seeming gap in the chain of custody is not determinative. *Gilliam v. State,* (1978) 270 Ind. 71, 383 N.E.2d 297.

In *Gilliam* the defendant was convicted of dealing in illicit drugs. As in the instant case, the drugs were fungible in nature and had been mailed to a state police laboratory for analysis. Gilliam argued, as Smith does here, that the chain of custody was insufficient because various individuals having contact with the package prior to the examining chemist failed to testify. In affirming the conviction the supreme court stated:

"Appellants contend that since the secretary and technician who handled the evidence did not testify concerning their handling of the evidence, the chain-of-custody shown was incomplete. We believe that it was not. The purpose of the requirement that a chain-of-custody be shown is to eliminate the possibility of tampering, loss, or substitution of the evidence. *Graham v. State,* (1970) 253 Ind. 525, 255 N.E.2d 652. Here the possibility of tampering was precluded by the sealing of the envelope, that of loss or substitution by the recording of the registered mail number by both Sergeant Schultz and the chemist. These precautions give 'reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition,' *Guthrie v. State,* (1970) 254 Ind. 356, 363, 260 N.E.2d 579, 584, and obviate any need for the testimony of the technician, secretary, and

any postal employees who handled the sealed package in transit."

*Id.* at 74–75, and 383 N.E.2d 300.

 Likewise, in the present case we find the precautions taken obviated the need for the testimony of the evidence clerk and laboratory manager. Bowles testified the package was placed in his hands intact and unopened. Thus, as in *Gilliam,* the possibility of tampering was precluded. The same can be said of the danger of loss or substitution inasmuch as the package was mailed by certified mail with Abbott receiving the receipt verifying its arrival in Evansville. We find, therefore, the chain of custody was sufficient and the admission of the tablets was proper.

Smith's conviction is affirmed in all respects.

ROBERTSON, P.J., and NEAL, J., concur.