Charles MENDEZ, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 64A03–8610–CR–289.

Court of Appeals of Indiana,
Third District.

May 28, 1987.

James V. Tsoutsouris, James A. Johnson, Portage, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Defendant-appellant Charles Mendez appeals his convictions on two counts of dealing in heroin, Class B felonies.

The evidence relevant to this appeal discloses that Mendez became acquainted with Keith Crizer in late 1981. On January 4, 1982 Crizer, in his capacity as a confidential informant, contacted Mendez regarding the purchase of heroin. Mendez stated that he did not have any heroin at the time. The next day Mendez telephoned Crizer to set up the sale of some heroin. Crizer told Mendez that he would contact his "partner" who had the money. Crizer then telephoned the police officers for whom he was working.

Mendez drove to the trailer in which Crizer was staying. Crizer had been strip-searched and equipped with a recording device and transmitter. When Mendez arrived, Crizer went out to Mendez's car and purchased a gram of heroin from Mendez for $100.00. Although Mendez refused to meet Crizer's "partner," Mendez told Crizer that he was willing to conduct more business with Crizer.

Crizer then returned to the trailer and gave the heroin to the police officers. Crizer was again searched. While the officers heard the transaction through the transmitter, they discovered that the tape-recording had malfunctioned.

Crizer called Mendez and arranged to buy another gram of heroin on January 6. Again Mendez was not interested in meeting Crizer's "partner." However, the transaction on January 6 was successfully recorded.

Mendez was later arrested for selling heroin. His first trial in 1983 ended in a mistrial. Mendez's second trial in 1986 resulted in his convictions on both counts. This appeal ensued.

Mendez raises four issues on appeal. As restated, the issues presented for review are:

(1) whether the trial court erred in allowing into evidence the testimony of an unavailable witness who had testified in Mendez's previous trial; thereby denying Mendez his Sixth Amendment right to confrontation;

(2) whether the trial court erred in allowing into evidence a tape-recording over Mendez's objection that the recording was inaudible;

(3) whether the State established a sufficient chain of custody for introduction of two of its exhibits which contained packets of heroin; and

(4) whether sufficient evidence supported the jury's verdicts of guilt.

■ Mendez's first trial ended in a mistrial after State's witness, Charles Brown, had testified under oath in the proceeding. Brown had been cross-examined by Mendez's attorney at the first trial. Mendez was represented by different counsel at this second trial when the State offered the transcribed testimony of Brown, due to Brown's unavailability. Mendez objected to the testimony only on the ground that the State failed to adequately demonstrate Brown's unavailability. However, on appeal Mendez urges that the admission of the prior testimony denied him his Sixth Amendment right to confrontation. Notwithstanding Mendez's failure to properly object, the issue will be addressed.

In *Spence v. State* (1979), 182 Ind.App. 62, 393 N.E.2d 277, this Court outlined the necessary factors when determining whether prior testimony meets the constitutional guarantees of the Sixth Amendment. The court must determine whether "the witness was under oath at the prior proceeding, whether the defendant was represented by counsel at the prior proceeding, whether the prior proceeding was conducted before a judicial tribunal equipped to provide a judicial record, and whether the defendant had every opportunity to cross-examine the witness as to his statement." *Spence, supra*, 393 N.E.2d at 280–281.

Mendez argues that *Spence* also requires that the defendant be represented by the same counsel at both proceedings before the testimony from a prior proceeding may be used. Such was the case in *Spence*, but *Spence* does not set out continuity of representation as a requirement.

In the present case Brown was under oath at the prior proceeding, Mendez was represented by counsel, the prior proceeding was before a judicial tribunal and recorded, and Mendez's attorney cross-examined Brown regarding his statements. Under the requirements noted in *Spence, supra,* Brown's testimony from the previous proceeding was admissible.

■ Next Mendez argues that the tape-recording offered by the State as evidence of the second drug transaction was inaudible; thus, the trial court erred in allowing the tape to be played to the jury. Admissibility of a tape-recording is judged by the foundational requirements discussed in *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795. The recording must be of "such clarity as to be intelligible and enlightening to the jury." *Lamar, supra,* 282 N.E.2d at 800. Specifically, when taken as a whole the tape must be of such clarity that it does not lead to jury speculation upon its contents. *Schoffstall v. State* (1986), Ind.App., 488 N.E.2d 349, 353. A determination whether the recording is admissible lies within the discretion of the trial court, and may be reversed only upon an abuse of that discretion. *Wallace v. State* (1986), Ind., 498 N.E.2d 961, 965.

■ At trial Mendez objected to the introduction of the tape alleging that some parts were of such poor quality that it could lead the jury to speculate. The trial court noted that the jury was instructed not to speculate on anything. A review of the tape included within the record on appeal discloses that only the first few seconds of the tape were of questionable clarity. Taken as a whole the tape was not of such poor quality as to lead the jury to speculation. Accordingly, the trial court did not abuse its discretion in admitting the tape into evidence.

■ Mendez also questions whether the State established a sufficient chain of custody for introduction of two packets of heroin. Mendez's argument focuses upon the whereabouts of the exhibits during the nearly three years between his first trial and the second trial. However, the evidence clearly establishes a proper chain of custody for the exhibits during the relevant time period, that is the time between purchase from Mendez by Crizer and the time the exhibits were analyzed to determine their contents. *See, Smith v. State* (1983), Ind.App., 452 N.E.2d 160, 166. Although a proper chain of custody is especially important when the evidence is fungible in nature, the State need not exclude every possibility of tampering. *Smith, supra.* Instead, the State need only demonstrate that the evidence has passed through the various hands in a relatively undisturbed condition. *Smith, supra.*

■ In the present case Crizer gave the heroin to one of the police officers who testified that the evidence was placed in a safe by an evidence clerk until the toxicologist could examine the contents. After performing the analyses, the toxicologist sealed the evidence and placed his signature, the date and the case number on the evidence. At the time of Mendez's trial, the toxicologist was able to testify that his seal on the evidence had not been tampered with in any way. Consequently, admission of the evidence and the corresponding testimony by the State's witnesses on the evidence was based upon a proper chain of custody.

■ Mendez's final contention questions the sufficiency of the evidence upon which he was convicted. It is well established that a court on review may not weigh the evidence or judge the credibility of witnesses. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672. Additionally, the court may only consider the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom.

Mendez asks this Court to determine that the testimony of Crizer was inherently unbelievable. This the Court cannot do. Also, Mendez ignores evidence presented

through other witnesses which would establish his guilt.

The trial court and the jury's verdicts are in all things affirmed.

Affirmed.

GARRARD and MILLER, JJ., concur.