## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 21 2018, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rondre Cook,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 21, 2018<br><br>Court of Appeals Case No.<br>82A05-1712-CR-2907<br><br>Appeal from the Vanderburgh Superior Court<br><br>The Honorable Mary M. Lloyd, Judge<br><br>Trial Court Cause No.<br>82D03-1706-F6-3378 |

**Robb, Judge.**

# Case Summary and Issue

[1]  Following a jury trial, Rondre Cook was found guilty of possession of cocaine, a Level 6 felony. The jury subsequently found that Cook was an habitual offender. The trial court sentenced Cook to one year with the Indiana Department of Correction for the possession conviction, enhanced by two years for being an habitual offender. Cook raises one issue for our review: whether the trial court erred in admitting evidence of cocaine found in his possession. Concluding that the State met its burden to establish an adequate chain of custody for the cocaine, we affirm the trial court's admission of the challenged evidence.

# Facts and Procedural History

[2]  On June 4, 2017, Officer Craig Pierce of the Evansville Police Department was working his second job as an off-duty courtesy officer at a local apartment complex. Pierce monitored the grounds of the apartment complex and routinely stopped people whom he did not know to be residents so that he could determine if they had good reason to be there. Toward the end of his shift, Pierce observed Cook enter the back of one apartment building. Cook stood out to Pierce because Pierce did not recognize Cook as a resident of the complex, Cook was moving quickly, and Cook was sweating profusely despite not wearing a shirt.

[3]     Pierce lost sight of Cook but observed him minutes later exiting another building on the complex grounds. Pierce approached Cook and asked for his identification. Pierce ultimately detained Cook as part of another ongoing investigation. After handcuffing Cook, Pierce took possession of a Crown Royal drawstring bag that Pierce had been carrying. Inside the bag was a plastic baggie containing a white, rock-like substance. Pierce suspected that the substance was cocaine.

[4]     Unknown powdery substances carry an increased safety concern for officers because of the possibility of fentanyl exposure. Transcript, Volume 2 at 68-69. Detective Joshua Patterson of the Joint Drug Task Force was called to the scene because he had additional training to address those safety concerns. Pierce gave Patterson the baggie containing the white powder.

[5]     Patterson took the suspected narcotics to his office where there was better testing equipment than he could have used on scene. Patterson did an initial test on the white powder that indicated that it contained cocaine. Patterson then placed the baggie containing the suspected cocaine in a larger plastic evidence bag and sealed it with brown tape which he initialed on each side. To prevent tampering, Patterson overlapped the tape and the bag so that it was not possible to open the bag without destroying the tape and his initials. Patterson then dropped the sealed bag into a locked evidence box to which only the evidence custodian had a key. As a matter of routine, after evidence was dropped in the locked evidence box, the evidence custodian would retrieve it and store it in an evidence vault until the evidence was sent to the Indiana State

Police Laboratory ("ISP Lab") for testing. Either Julie Craddock or Katie Roy was the evidence custodian at the time the evidence at issue was in the State's custody.

[6] On August 29, 2017, William Bowles, a forensic scientist with the ISP Lab, received the suspected cocaine for testing. The evidence tape seal was still on the evidence bag when Bowles received it. Bowles gained access to the suspected cocaine via the bottom of the evidence bag. Bowles performed two tests on the powder and determined that it was .17 grams of adulterated cocaine. After performing the tests, Bowles resealed the bottom of the evidence bag the cocaine had come in and initialed the heat seal.

[7] The State charged Cook with possession of cocaine, a Level 6 felony. In a separate information, the State also alleged that Cook was an habitual offender. Cook's jury trial took place on October 16, 2017. Pierce confirmed that he "was with the narcotics until it [sic] got to Detective Patterson" and that no one had tampered with the evidence before Patterson took possession of it. *Id*. at 101-02. The cocaine was admitted into evidence as Exhibit 11 over Cook's objection that the State had not established an adequate chain of custody for its admission. The trial court also admitted Exhibit 12, a laboratory report confirming that the white powder was cocaine, over Cook's objection that it was based upon evidence for which the State had failed to establish an adequate chain of custody. The jury found Cook guilty of Level 6 felony cocaine possession and subsequently found that he was an habitual offender. Cook now appeals his conviction.

# Discussion and Decision

Cook contends that the trial court erred when it admitted Exhibits 11 and 12[1] because the State failed to establish an adequate chain of custody. Specifically, he argues that the State's evidentiary foundation for the challenged exhibits was lacking because it did not show how Pierce took possession of the cocaine, how Patterson took possession of it, and how it was transported to Bowles for testing. Appellant's Brief at 9.

## I. Standard of Review

The trial court admitted Exhibits 11 and 12 over Cook's objection that the State's chain of custody was incomplete. The admission or exclusion of evidence following a chain of custody objection is within the sound discretion of the trial court. *Doty v. State*, 730 N.E.2d 175, 178 (Ind. Ct. App. 2000).

## II. Chain of Custody

To establish an adequate chain of custody, the State must give reasonable assurances that the evidence remained in an undisturbed condition from the time that it was taken from the defendant until it was analyzed to confirm its composition. *Smith v. State*, 452 N.E.2d 160, 166 (Ind. Ct. App. 1983). Although this burden is higher when fungible evidence is involved, the State is not required to establish a perfect chain of custody, and once the State "strongly

---

[1] Cook also stakes his claim of trial court error on the admission of Exhibits 10 and 13, but we do not address those exhibits because he was not convicted of any offenses relating to them.

suggests" the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to its admissibility. *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002). In addition, there is a presumption of regularity in the handling of evidence by law enforcement officials, and there is a presumption that officers exercise due care in performing their duties. *Id*. To succeed in challenging the State's chain of custody, a defendant must do more than present evidence that merely raises a possibility that the evidence may have been tampered with. *Id*.

[11] Cook argues that the State's evidentiary foundation was inadequate because it failed to show how the cocaine "got into the police car and to Officer Pierce," and failed to show how the cocaine came to be in Patterson's possession. Appellant's Br. at 9. However, the evidence at trial showed that Pierce removed the Crown Royal bag containing the baggie of cocaine from Cook after detaining him. Pierce had the cocaine with him, and no one tampered with it, until he gave it to Patterson for field testing. Patterson took the cocaine to his office where he did an initial test on it before sealing the baggie containing the cocaine in an evidence bag with brown tape which he initialed. He dropped the bag into a sealed evidence locker where one of two possible evidence custodians retrieved it and stored it until it was shipped to the ISP Lab for testing. This seal was still on the evidence bag when Bowles received it at the ISP Lab where he tested its contents and confirmed that it was, in fact, cocaine. Thus, we disagree with Cook that the State failed to establish how Pierce and Patterson came into possession of the cocaine. Indeed, this evidence showed that the State was in continuous possession of the cocaine from the

time that it left Cook until it was tested by Bowles and that it remained in an undisturbed condition.

[12] Additionally, although the State's trial preparation certainly could have been more thorough, the State's failure to specifically identify the person who transferred the evidence from Patterson to Bowles was not fatal to its chain of custody showing. The fact that the bag was sealed by Patterson and remained sealed when Bowles received it was reasonable assurance that it had not been tampered with during transit. *See Smith*, 452 N.E.2d at 166-67 (holding that it was not necessary for the State to show every person who touched the challenged evidence en route to testing, as its seal was intact upon arrival at the laboratory). In any event, Cook does not direct our attention to any facts in the record which remotely suggest that the cocaine was tampered with, lost, or substituted at any time that it was in the State's possession. Even if he had, because the State "strongly suggested" the whereabouts of the cocaine at all times, any gaps in its chain of custody would not have prevented its admission at trial. *Troxell*, 778 N.E.2d at 814. Because the State established a proper chain of custody for the cocaine, we hold that the trial court acted within its discretion when it admitted Exhibits 11 and 12.

# Conclusion

[13] Concluding that the State established that the cocaine passed in an undisturbed condition throughout its chain of custody and that the trial court did not abuse its discretion when it admitted evidence related to that cocaine, we affirm.

Affirmed.

Najam, J., and Altice, J., concur.