PLEAK ET AL. *v.* COTTINGHAM, ADMINISTRATRIX.

[No. 14,245.   Filed November 18, 1931.   Rehearing denied April 7, 1932.   Transfer denied ·May 11, 1932.]

*Oscar Birch* and *Charles W. Ashley,* for appellants.
*Oscar Lanphar* and *R. W. Armstrong,* for appellee.

LOCKYEAR, J.—This was an action brought by Charlotte Cottingham, administratrix of the estate of Lucille Cottingham, deceased, against Ezra H. Pleak and Fred Lutz for the unlawful death of the deceased, which it is charged in the complaint was caused by the appellants' joint action in producing an abortion on the said Lucille Cottingham.

The issues were joined upon a second amended complaint in one paragraph and answer in three paragraphs, the first of which is a general denial and the other two paragraphs are answers setting up affirmative matter.

The appellant Fred Lutz filed an answer in two paragraphs, the first a general denial and the second an affirmative answer. The case was submitted to a jury for trial and the jury returned a verdict in favor of the plaintiff against both appellants in the sum of $2,000, for which amount judgment was rendered on the verdict.

The second amended complaint alleges, in substance, that the appellee herein is the duly qualified and acting administratrix of the estate of Lucille Cottingham, deceased, and that appellant Ezra H. Pleak is and was on the day of the grievance hereinafter charged a duly licensed practicing physician and surgeon, engaged in the practice of his profession in the city of Evansville, Indiana; that said Lucille Cottingham was a girl, 18 years of age, and that she was keeping company with

the appellant Fred Lutz who gained her confidence and seduced her and caused her to become pregnant with child by him; that he then took her to the office of appellant Ezra H. Pleak, and the said Pleak and Lutz, then and there, on December 2, 1928, undertook to and did commit an abortion upon the said Lucille Cottingham unlawfully and which abortion was not necessary to save the life of the decedent, and, by reason of the unlawful conduct of the two appellants, the said Lucille Cottingham then and there died; that at said time she was a strong, vigorous and healthy girl, with a life expectancy of 45 years; that she was able to earn the sum of $25 per week and out of said earnings she was contributing to the support, comfort and maintenance of her mother and her two brothers, Russell, aged 16 years, and Walter, aged 14 years, and her said mother and two brothers were and are her heirs at law and next of kin. Therefore, the appellee demanded judgment and all proper relief.

Appellant Ezra Pleak filed a demurrer to the plaintiff's amended complaint on the grounds that the complaint did not state facts sufficient to constitute a cause of action for the reasons set out in a memorandum thereto; that the amended complaint did not state that the causes complained of were the proximate and direct result of the death of Lucille Cottingham, nor does it allege that the abortion was not necessary to save the life of said Lucille Cottingham, nor does the amended complaint allege that a legal guardian of Lucille Cottingham was not in existence at the time of her death.

Appellant Pleak, for his second paragraph of answer to plaintiff's amended complaint, says that he earnestly believes that the acts performed by him were necessary to save the life of said Lucille Cottingham.

The third paragraph of answer of the appellant Ezra Pleak and second paragraph of answer of Fred Lutz

are upon the alleged grounds that Charlotte Cottingham, administratrix, is not the proper party in interest.

Appellant Fred Lutz was sworn as a witness in this case and was asked the question, "Are you the same Fred Lutz, who testified in the trial of the State of Indiana against Ezra H. Pleak in the County of Vanderburgh State of Indiana?" and was permitted to testify over objections of the appellant Pleak and said: "I testified in that trial. In that trial I told the whole truth about it. I told all the facts as I know them. I told all the facts concerning our connection with the death of Lucille Cottingham in the office of Doctor Pleak and my connection with it and Doctor Pleak's connection with it."

Upon the advice of counsel, the appellant Lutz then refused to testify further.

One Charles Harmon, reporter, then was called and testified and gave in evidence the questions and answers given by said Fred Lutz in said trial of the State of Indiana against Ezra Pleak, wherein he told, in detail, of his going with Lucille Cottingham to the office of appellant Pleak, and of Pleak performing the operation upon her as set out in the complaint, and that he stood by her as she lay on the operating table while Pleak operated upon her and that, shortly after the operation was completed, the said Lucille Cottingham was removed by him to a couch where the doctor administered restorative remedies to her, but that, within a short time after said operation, she then and there died, the details of which are not necessary to set out in this opinion. On motion of appellant Pleak, the jury was properly instructed that "the jury should not consider the testimony given by Fred Lutz against anybody but him, and it will not be proper for you to consider it against the other defendant, Pleak, as it is not binding upon him. As to the

appellant Lutz we hold that his admissions make it unnecessary to consider anything further in relation to him.

The following assignments of error on the part of Ezra Pleak, supported by points and authorities are: (1) The court erred in overruling appellant Pleak's demurrer to appellee's second amended complaint; (2) the court erred in overruling appellant's separate motion for a new trial. It is clear that the second amended complaint states a cause of action against both defendants and the court did not err in overruling the demurrer thereto.

The appellant's motion for a new trial is on the grounds: (1) That the damages assessed by the jury are excessive; (2) the verdict of the jury is not sustained by sufficient evidence; (3) the verdict of the jury is contrary to law; and (4) alleged error in exhibiting to the jury the coat of the deceased and as a witness was asked whether she had seen any indications of a hemorrhage on the coat and the witness testified over objections that there was not. The reason of the objection being that it was not shown that the coat was in the same condition at the time of the trial as it was alleged to have had blood on it. (5) Also error is alleged in that a mortality table was introduced in evidence over proper objection showing the expectancy of life of the deceased, Lucille Cottingham. Error also is alleged in that the court refused to take said cause from the consideration of the jury on the grounds that, in the closing argument, the attorney for appellee stated, in substance, that appellant Pleak is a convicted criminal and is now serving time in the State Prison. As to this last error, the record shows that the court sustained an objection to the remark and said counsel thereafter desisted further mentioning said

matter. We hold that the court's action in that behalf was sufficient to protect the appellant's rights.

The evidence in the record to support the verdict against the appellant Pleak is as follows: One Max Lowe testified that he was the coroner of Vanderburgh County and that on December 2, 1928, he viewed the body of a female; he found the body over at Schaeffer and Sons, funeral directors; was called by an assistant of the Schaeffer firm, who went after the body at Dr. Pleak's office. This was on December 2 about 5 or 6 p. m. It was the body of a young woman, about 18 years of age. She was dead. "In my judgment she had been dead about an hour. I found the vagina was packed with gauze, and noticed her breasts were full. I called the police station and sent out and had Dr. Pleak and this fellow Lutz arrested. From the examination that I made and the appearance of the body of Lucille Cottingham, she had been pregnant shortly before her death. I had an autopsy held. Dr. Barnes held the autopsy and I was present."

Henry C. Retzel testified that his occupation was that of embalmer at Schaeffer and Sons, engaged in the occupation and business of funeral directors. He testified further that, on December 2, 1928, he was called to view the body of Miss Cottingham at the office of Dr. Pleak in the city of Evansville; he found her on a couch in a little room. He told Dr. Pleak where he was from, and Pleak told him where the body was. "Asked him if it was necessary to call the coroner; put my hand on the body and it was warm; she had not been dead long. Dr. Pleak told me when she died. He did not say what the trouble was. I did not ask. I asked him if he would sign a death certificate and he said 'No.' I did not see any blood. The doctor gave me a pair of bloomers and said they belonged to her. They were not bloody."

One William Barns testified that he is a practicing physician and surgeon in the city of Evansville; that he examined the body of the deceased; that she had not been dead very long; that the womb was enlarged and was empty; that there was a thickening of the walls due to some scraping of some instrument; it is what is called a *post mortem uterus,* which has been pregnant and is empty. "It had, in my mind, some time shortly contained a child. I saw signs of what we diagnosed or thought to be instrumental handling—that scraping and thickening of the walls. She had practically bled white. After we cut through the abdominal wall to get to the internal organs, everything was normal except the pelvis condition. The cause of her death, I believe to be a hemorrhage from the uterus. She appeared to be a very healthy sort of girl and did not appear to have been suffering from any sort of disease. In my opinion pregnancy had existed for about four to six months.".

One Roxie Austin testified that she was the sister of the deceased Lucille Cottingham; that her sister was about 18 years of age, her health was good and weighed about 125 pounds and was about five feet four inches tall and worked at the telephone office making $18 per week. She testified to the death of her mother; that her mother had died since the bringing of this action and that her brothers Russell and Walter are 17 and 15 years of age; that her mother had been paralyzed two years at the time of her death; that Lucille was contributing to the support of her mother and two brothers.

Fred Lutz was then produced as a witness on behalf of the appellant. He said that, in his opinion, the condition of Lucille Cottingham's health seemed all right when he took her to Dr. Pleak, and that she was not having any hemorrhage when he took her there. The witness Lutz testified: "The instrument that Dr. Pleak

used had a curve on the end of it and it was blunt. More of something that would break loose. It wasn't sharp. There was an instrument there at the time that would open and close like a scissors. He used that."

In regard to the evidence objected to, it is sufficient to say that, with the exception of the denial of the appellant Pleak, appellee's complaint is supported by abundance of evidence over and above the evidence objected to and, under such circumstances, we cannot for that reason reverse this judgment.

The admission of improper evidence of a fact in issue is harmless when the verdict or judgment is supported by sufficient competent evidence. *Parker* v. *State, ex rel.* (1846), 8 Blackf. (Ind.) 292; *Manchester* v. *Doddridge* (1852), 3 Ind. 360; *Parmlee* v. *Sloan* (1871), 37 Ind. 469; *Dickinson* v. *Colter* (1874), 45 Ind. 445; *Marshall* v. *Stewart* (1881), 80 Ind. 189; *Citizens State Bank* v. *Adams* (1883), 91 Ind. 280; *Forbing* v. *Weber* (1885), 99 Ind. 588; *Phenix Ins. Co.* v. *Pickel* (1891), 3 Ind. App. 332, 29 N. E. 432; *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360, 71 N. E. 201.

The error of the court in the giving or refusing to give any instruction complained of is not assigned as a reason for a new trial and cannot be considered on appeal.

It is contended that the damage ($2,000) assessed is excessive. After reading the evidence given in this case and all the details thereof, it is marvelous how well the jury kept within bounds and followed the law as given by the court and were not apparently led away by sympathy and sentiment for the girl who met her death by abortion in a so-called doctor's office, but awarded damages only in an amount which to them seemed fair compensation to

those who were dependent upon the deceased for support.

We find no reversible error in the record.

The judgment is affirmed.