**Timothy J. BARTRUFF, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 64A04–8708–CR–262.**

Court of Appeals of Indiana, Fourth District.

Sept. 14, 1988.

Rehearing Denied Oct. 26, 1988.

Thomas J. Mullins, Merrillville, Ellen S. Podgor, Bensalem, Pa., for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Presiding Judge.

Defendant–Appellant Timothy Bartruff (Bartruff) appeals his conviction of two counts of dealing in a schedule II controlled substance.

We affirm.

Bartruff presents twenty issues on appeal. Restated, they are:[1]

1. whether the trial court erred in admitting the deposition of Alex Thomas, a confidential informant who resided in another state;

2. whether the trial court erred in refusing to order the appearance of Bartruff's minor son pursuant to a subpoena;

3. whether the trial court properly refused to dismiss the charges against Bartruff based on alleged defects in the charging instruments;

4. whether the trial court erred in permitting the rebuttal testimony of a witness who was present in the courtroom during other witnesses' testimony despite the existence of a prior order for separation of witnesses;

5. whether the trial court erred in admitting testimony of previous incidents of drug dealing by Bartruff;

6. whether the trial court improperly admitted postal records to indicate the receipt of drugs through the mail;

7. whether the trial court improperly admitted the seized drugs as evidence;

8. whether there is sufficient evidence to support the verdict;

9. whether the tape recordings of the transaction were properly admitted and handled by the trial court; and

10. whether the trial court erred in allowing the jury to hear the tape recordings after retiring to the jury room.

In October, 1985, Ronald Keifer (Keifer) and Alex Thomas (Thomas), confidential informants, went to Bartruff's home where they purchased "crank", a drug containing methamphetamine hydrochloride. Keifer was wired with a recording device and Thomas with a transmitter, which enabled them to record their conversation with Bartruff.

Bartruff was charged with two counts of dealing in a schedule II controlled substance, class B felonies. After a jury trial, Bartruff was convicted of both counts and sentenced to two concurrent terms of ten years each. He now appeals.

Further facts as necessary appear below.

## I.

Bartruff contends the trial court erred in permitting the State to introduce Thomas's deposition into evidence, thereby depriving him of his constitutional right to confront the witnesses against him and depriving the jury of the opportunity to observe them as they testified. The deposition was admitted because Thomas was deemed unavailable based on his residency in another state at the time of trial.

In several cases the United States Supreme Court has discussed the test for determining the unavailability of a witness. It stated a witness is not unavailable unless prosecutorial authorities make a *good-faith effort* to secure his presence at trial. *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597; *Berger v. California* (1969), 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508; *Barber v. Page*

---

1. Bartruff also raised the following issues in his brief:

 M. That the court erred in denying defendant's motion for a directed verdict.

 N. That the court erred in denying defendant's motion for judgment on the evidence. (Appellant's brief, p. 2). However, since Bartruff merely alleges such errors and fails to provide the required argument and support, he has waived these issues. *Hutchison v. State* (1987), Ind.App., 511 N.E.2d 1, 5; *In Re: Marriage of Lay* (1987), Ind.App., 512 N.E.2d 1120, 1121, n. 1. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

(1968), 390 U.S. 719, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255. (Emphasis supplied). If no possibility of procuring the witness's attendance exists, "good faith" demands nothing of the prosecution; however, if there is even a remote possibility affirmative measures will be successful, good faith may demand their effectuation. *Ohio, supra.* The extent to which the prosecution must go to produce a witness is a question of reasonableness. *Id.*

Bartruff contends Thomas's deposition was inadmissible at trial because the State failed to prove it made a "good faith effort" to procure his attendance so he could testify in person. Because the State did not petition for the issuance of a subpoena directed to Thomas to attend and testify under IND.CODE 35–37–5–5, the required showing of a good faith effort to compel Thomas's attendance was not shown, Bartruff claims. We agree.

 A defendant in a criminal case has a Sixth Amendment right to personally confront the witnesses against him. Before out-of-court statements are admissible against the defendant in a criminal trial in circumvention of this right, the State must demonstrate,

(a) the witness at the time the hearsay statement was taken was subject to cross-examination by the defendant, *Roberts,* 100 S.Ct. at 2542–43, and

**2.** In *Roberts,* the State had served five subpoenas upon the witness's parents, the witness was out of state, and her whereabouts were unknown. In *Berger,* the witness was merely out of state, telephone calls had been made to him but the State made no attempt to serve the witness with a subpoena. *Berger,* 89 S.Ct. at 540.

**3.** I.C. 35–37–5–5 reads in pertinent part:
(a) If a person in any state that has made provision for commanding persons within its borders to attend and testify in criminal prosecutions in this state ... is a material witness in a prosecution pending in a court of record in this state ..., a judge of the court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. This certificate shall be presented to a judge of a court of record in the county of the state in which the witness is found.

(b) it made a good faith effort to secure the witness's attendance at trial.

The mere fact a prosecution witness is out of the state is not sufficient to warrant admission of the hearsay statement. *Berger,* 89 S.Ct. at 541.[2]

The State here argues because the witness Thomas repeatedly refused to return to Indiana to testify and stated in his deposition he would not return here for such purposes even if he were subpoenaed, the required showing of unavailability was made. We disagree.

Indiana has adopted the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings, *cf.* IND.CODE 35–37–5–1, et seq. IND.CODE 35–37–5–5 sets out a procedure by which reluctant witnesses residing out of state may be brought into court to testify. Under that act the trial judge upon request may issue a certificate to a judge in the reciprocal state's county where the witness resides compelling such witness's appearance at trial.[3] The statute further provides if the witness so subpoenaed fails to testify, he is subject to sanctions by the court. Further, if the forwarding judge deems it necessary, he may request the witness's arrest without notice in the reciprocal state and his delivery to the requesting state's officer without bond. *Cf.* I.C. 35–37–5–4(c).

Here, Tennessee, Thomas's home state, was a reciprocal state, also having adopted

(b) If the witness is summoned to attend and testify in this state, the witness shall be tendered a sum for expenses equal to the amount provided under IC 33–19–1–5. The fees shall be a proper charge upon the county in which the criminal prosecution or grand jury investigation is pending.

(c) A witness who has appeared in accordance with the provisions of the subpoena shall not be required to remain within this state for a longer period of time than the period mentioned in the certificate, unless otherwise ordered by the court.

(d) If the witness fails without good cause to attend and testify as directed in the subpoena, the witness shall be punished in the manner provided for the punishment of any witness who disobeys a subpoena issued from a court of record in this state.

the Uniform Act in question. *Cf.* Tenn.St. § 40–2429, Tenn.Code Annot'd. §§ 40–17–201 to 40–17–210.

■ Although we find no Indiana precedent directly on point,[4] we believe the minimum required to show a good faith effort in this regard is evidence the prosecution filed a petition for the issuance of a subpoena under I.C. 35–37–5–5 and continuing reasonable attempts to procure the witness's attendance at trial before his deposition is admissible, even though the witness was subject to cross-examination when the deposition was taken. Mere statements by an out-of-state witness he will not attend and testify even if subpoenaed do not satisfy the good faith effort requirement nor demonstrate the witness is unavailable. Thus, we conclude the trial court erred by admitting Thomas's deposition into evidence. However, such error is harmless.

When there is legal and competent evidence supporting the court's conclusion, a judgment will not be reversed. *Batchelor v. State* (1920), 189 Ind. 701, 125 N.E. 773, 778. Even when a constitutional right is invaded, we will not reverse a verdict for harmless error. *Sparks v. State* (1942), 220 Ind. 343, 42 N.E.2d 40, 41. When a constitutional error is found, we may still affirm when the error is harmless beyond a reasonable doubt. *Hewell v. State* (1984), Ind.App., 471 N.E.2d 1235, 1239.

■ Here, Keifer's testimony standing alone provides adequate support for the conviction. A conviction may be sustained on the uncorroborated testimony of a single witness. *Mullins v. State* (1987), Ind., 504 N.E.2d 570, 573. Keifer testified he was present when he and Thomas purchased crank from Bartruff. Keifer's testimony provided substantial competent evidence supporting the judgment. The trial court's error in admitting Thomas's deposition was harmless.

## II.

Bartruff next contends the court erred in refusing to order the production of his minor son who was present at the drug transaction. During the trial, Bartruff served a subpoena on his ex-wife to compel the appearance of their seven year old son. The child was not listed on Bartruff's witness list. The trial judge instructed Bartruff's ex-wife the child need not appear. Bartruff argues he was denied his Sixth Amendment right to present witnesses on his behalf.

■ While a witness may be excluded from testifying, witness exclusion should not be employed unless the defendant's breach was purposeful or intentional or unless substantial and irreparable prejudice would result to the State. *Wiseheart v. State* (1986), Ind., 491 N.E.2d 985, 991. When a defendant seeks to call a previously undisclosed witness, he must make an offer of proof on the nature of the proffered testimony. *Id.* If he does not make an offer of proof, he has not adequately preserved the issue for appellate review. *Id.*

■ Here, Bartruff had knowledge of his son's potential testimony more than six months prior to the date of trial, yet he waited until the middle of the State's case to inform the court and the State of his desire to call his son as a witness. Bartruff's breach was intentional. Further, he failed to include his son's name on his list of witnesses. The trial court did not err in excluding the witness.

## III.

Bartruff next argues the trial court erred in denying his motion to dismiss based on duplicity in the informations and a resulting failure to apprise him of the crimes with which he was charged. The wording of the informations is identical and states, in pertinent part:

> Timothy J. Bartruff ... on or about the 23rd day of October A.D. 1985 ... know-

---

4. See, however, *Ortez v. State* (1975), 165 Ind. App. 678, 333 N.E.2d 838, where this court determined the defendants in a drug-related trial were denied a fair trial when an undercover

paid police informant was advised to leave the area and did, making him unavailable for deposition and trial under a former act limiting the compelled return of witnesses to 1,000 miles.

ingly or intentionally deliver (sic) a controlled substance classified in Schedule II, to-wit: methamphetamine hydrochloride, . . .

Bartruff contends the informations fail to state the nature, the times and the places of the offenses, as required by IND. CODE 34-34-1-2.

■■■■ The purpose of an information is to inform the court of the facts alleged and furnish the defendant with a description of the charges against him so he may prepare his defense. *Trotter v. State* (1981), Ind., 429 N.E.2d 637, 640. Here, the informations sufficiently informed Bartruff of the charges against him. The nature of the crimes is stated in statutory language leaving no question as to the charges made. The time and place were also clearly specified in that the information stated the county and state where the offense took place. Additionally, we have held the statement of time is sufficient if it alleges the offense occurred on or about a particular date, as was stated here. *Brown v. State* (1980), Ind.App., 403 N.E.2d 901, 916, *trans. denied.*

■■■■ Bartruff also contends it was improper to charge him with two offenses when there was only a single transaction. This issue was resolved in *Hurst v. State* (1984), Ind.App., 464 N.E.2d 19, 22, where we held the involvement of two purchasers created more than one sales transaction, thereby creating multiple offenses. Each buyer is considered a different principal though both sales take place at the same time and location. *Id.* See also, *Dupin v. State* (1988), Ind.App., 524 N.E.2d 329. Bartruff was properly convicted of two offenses.

### IV.

Bartruff also argues the trial court erred in permitting a witness to testify as a rebuttal witness in violation of a prior order for separation of witnesses. At the trial's commencement, the court granted the motion for separation of the witnesses. Officer John Malone (Malone), a special agent with the Bureau of Alcohol, Tobacco and Firearms, testified as the State's first witness. He later testified on rebuttal, despite his presence in the courtroom during other testimony.

■■■■ Permitting a witness to testify in violation of a separation of witnesses order is a matter within the trial judge's discretion. *Wireman v. State* (1982), Ind., 432 N.E.2d 1343, 1349, *reh. denied.* The trial court may permit a witness to testify even where a clear violation of a separation order is shown, especially if there is no evidence of any connivance or collusion by the party calling the witness. *Id.* The course of action to be followed when such a violation occurs is also within the trial court's discretion. *Baysinger v. State* (1982), Ind. App., 436 N.E.2d 96, 100, *reh. denied.* We will not disturb the exercise of this discretion absent a manifest abuse of discretion. *Id.*

■■■■ Here, Bartruff argues Malone spoke directly in opposition to the testimony he heard while present in the courtroom. However, a careful reading of Malone's testimony reveals he merely responded to the questions asked him, and elaborated on his previous testimony, all without contradiction. Also, there is no evidence he altered his testimony in any way or fabricated his additional testimony. Additionally, there is no evidence of any connivance by the State in calling Malone on rebuttal. The trial court did not abuse its discretion in this regard.

### V.

■■■■ Bartruff next argues the trial court erred when it permitted witnesses to testify to incidents of drug dealing other than those to which Bartruff was charged.

Evidence of criminal activity other than that charged is generally inadmissible regarding the question of guilt. However, it may be admitted to show intent, motive, purpose, identity, or a common scheme or plan. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872. That is, such evidence may be admissible despite its tendency to show bad character or criminal propensity, if it makes the existence of an element of

the crime charged more probable than it would be without it. *Id.* The trial court has broad discretion in ruling upon the relevance of such evidence. *Wilson v. State* (1982), Ind., 432 N.E.2d 30, 34. The test of relevance is whether the evidence has some tendency to render a desired inference more probable than it would be without the evidence. *Id.*

Our Supreme Court has held the admission of a defendant's prior drug dealings is proper to show a common scheme or plan to engage in drug peddling. *Sweet v. State* (1986), Ind., 498 N.E.2d 924, 928; *Manuel v. State* (1977), 267 Ind. 436, 370 N.E.2d 904, 906. Here, the uncharged transactions are not so remote in time or circumstances as to be irrelevant. The circumstances of the uncharged transactions tend to prove a common scheme or plan of providing "crank" to others. For that reason, such testimony was admissible.

## VI.

■ Bartruff next contends the trial court erred in admitting postal records to indicate the receipt of drugs through the mail. At trial, a postmaster identified a series of papers indicating mailings sent to Bartruff's post office box and a money order receipt on a C.O.D. package addressed to the same box. Bartruff argues this evidence was irrelevant to the crimes charged and served only to prejudice the jury.

It is well established the trial court has wide latitude in determining the probative value of evidence, including the possible prejudicial impact. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 460, *reh. denied.* Even if evidence is only marginally relevant, it is within the trial court's sound discretion to determine its admissibility. *Id.* If the evidence only inconclusively connects the defendant with the crime, this goes to the weight, not the admissibility, of the evidence. *Johnson v. State* (1980), 272 Ind. 547, 400 N.E.2d 132, 133. Any evidence connecting the defendant with the crime is admissible. *Warfield v. State* (1981), 275 Ind. 396, 417 N.E.2d 304, 308.

Here, two witnesses testified Bartruff received drugs through the mail. The postal records support this testimony, as well as connect Bartruff to the crimes charged. The postal records were properly admitted.

## VII.

Bartruff next claims the trial court erred in admitting the seized drugs as evidence based on an improper chain of custody and an insufficient foundation. Holmes testified he received three packets from the confidential informants Keifer and Thomas which he kept within his control until they were submitted to the postal inspector, the final custodian of the packets. Holmes further testified he received two of the three packets from Keifer. Keifer, however, testified he gave one packet to Holmes, but conceded he may have given more.

■ To establish a chain of custody, the State must show a chain of possession from the original receiver of the evidence to the final custodian, thus laying a proper foundation connecting the evidence with the accused. *Watkins v. State* (1982), Ind., 436 N.E.2d 83, 85. The State, however, need not exclude every remote possibility of tampering, but need only afford a reasonable assurance the evidence passed to trial in an undisturbed condition. *Hensley v. State* (1986), Ind., 489 N.E.2d 62, 63.

■ Here, Officer Holmes testified to the location of the packets from the time he received them from the informants until they were deposited with the postal inspector. According to Holmes, he placed the packets in his diary, then placed the diary in his briefcase, which he took home. The next morning he submitted the packets to the postal inspector's office. The inspector placed the date and his initials on the packets in Holmes's presence, and both the inspector and Holmes identified the packets at trial. The inspector further detailed the procedure used in transporting the packets to and from the laboratory and the location of the packets until the time of trial.

Bartruff offered no evidence to support his theory there was a break in the chain of

custody. The mere possibility of a break is insufficient. Furthermore, a proper foundation connecting the packets to Bartruff was established through the detailed description of custody. Though Keifer testified to giving Holmes only one packet, he conceded there may have been more. The State had a proper foundation for admission of these packets by establishing a chain of custody thereof. The trial court did not err by admitting them into evidence.

### VIII.

■ Bartruff contends the evidence was insufficient to support the trial court's verdict. When presented with a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. Instead, we consider only the evidence most favorable to the State. If there is substantial evidence of probative value to support the jury's verdict, we will affirm the conviction. *Meredith v. State* (1987), Ind., 503 N.E.2d 880.

Bartruff sets forth two contradictions in the testimony of the informants and Holmes to support his allegation.[5] Additionally, he points out testimony was received from witnesses who failed poly-graph examinations and who were receiving benefits from the State to testify. He contends the evidence is "clearly not credible." In effect, Bartruff merely invites us to judge the credibility of the witnesses, a matter exclusively reserved for the trier of fact. We cannot do so on appeal. The evidence is sufficient to support the jury's verdict.

### IX.

Bartruff contends the tape recordings of the transaction were improperly admitted and handled. During the trial, the court admitted exhibits 2 and 8, which were exact copies of the original recordings. Both exhibits were admitted in their entirety. (R. 101, 127). The State played all of exhibit 2 (R. 104) and selected segments of exhibit 8.[6] During cross-examination, Bartruff attempted to play the recordings in their entirety. The court, however, refused to permit it then, but indicated Bartruff could play them in full during his case-in-chief if he so desired.[7] Bartruff agreed, but failed to play the tapes later. Bartruff now alleges the court's action denied him his right to cross-examination, but he fails to support this argument with citation to appro-

---

5. Bartruff notes the informants and Holmes testified to differing descriptions of the car driven to Bartruff's house and did not agree on the number of drug packets received by Holmes from Keifer.

6. Exhibit 8 was played in segments with the irrelevant portions deleted by Officer John Malone, the investigating officer. When asked his reasoning for the deletions, he replied:
 A. There were periods of time during the conversation that it was nonpertinent. The subjects were talking about union work, motorcycles, various things like that, and firearms.
 (R. 123).
 We further note the trial judge approved the playing of the excerpts because the entire tape was in evidence and Bartruff had the right to play the tape in full. The following colloquy took place:
 THE COURT: If you wish to play part or more of it, you may.
 MR. MULLINS: It would be my position I intend to play the whole thing, so play the whole thing now.
 THE COURT: Wait your turn. Let the State present their case.

. . . . .

 THE COURT: . . . As long as the entire tape is in evidence, as long as you have the right to play any part or all of it, if you so desire, no harm the State proceeding this way.
 (R. 129)

7. The following conversation took place:
 THE COURT: Well, the tape is in evidence. The Court will play—if Defense counsel wishes, the Court will have the entire tape played at a later time.
 MR. MULLINS: At a later time?
 THE COURT: I don't mind the jury hearing the entire tape. How long is the tape?

. . . . .

 MR. MULLINS: My only thought was if the Special Agent is gone or he doesn't return, then who is going to run the equipment? Other than that, I have no objection.
 MR. BERNING: I believe he'll be around.
 THE COURT: We'll get it played for them. Mr. Mullins.
 MR. MULLINS: Fine.
 (R. 169–170).

priate authority. Thus, this issue is waived. See, Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

■ Bartruff also contends the admission of the tape recordings was error because they were not the best evidence. The cassette tapes played for the jury were copies which were recorded in a different format. Malone testified they were exact copies of the original recordings.

Bartruff does not allege any inaccuracy in the copies or prejudice resulting therefrom, but merely states the copies were inadmissible. Even assuming Bartruff is correct in his allegation, the admission of improper evidence of a fact in issue is harmless when the decision is sufficiently supported by competent evidence. *Pleak v. Cottingham* (1931), 94 Ind.App. 365, 178 N.E. 309, 312. Where there is legal and competent evidence to support the court's conclusion, a judgment will not be reversed. *Batchelor, supra.*

Here, various witnesses testified to the same evidence presented by the tapes. The testimony of Holmes, Keifer, and Kathy Bartruff corroborate the evidence on the tapes. The judgment was sufficiently supported by competent evidence, thus the admission of the recordings, even if error, was harmless.

■ A transcript of those portions of the recordings played for the jury by the State was distributed to the jurors. Bartruff complains the trial judge failed to give adequate cautionary instructions to the jury regarding how they should view this transcript.

Though the judge's comments were sparse and informal, he did say

It's [the transcript] not an exhibit, simply given to the jury to aid them in understanding the tape and [they] can refer to it as they so desire.

(R. 104). Even if these comments are deemed inadequate to properly instruct the jurors in this regard, other substantial evidence corroborates the contents of the transcript. *Pleak, supra; Batchelor, supra.* The error, if any, was harmless.

X.

Bartruff next contends the trial court erred when it permitted the jury, after retiring to the jury room, to listen to the tape recordings in their entirety without opportunity for Bartruff to object. The bailiff of the trial court testified the jury asked to hear the tapes and, with the trial judge's consent, she played the tapes in the jurors' presence.

■ It is within the trial court's sound discretion to determine whether to permit the taking of exhibits or documentary evidence other than depositions into the jury room. *Thomas v. State* (1972), 259 Ind. 537, 289 N.E.2d 508, 509, *reh. denied; Dukes GMC, Inc. v. Erskine* (1983), Ind. App., 447 N.E.2d 1118, 1121, *trans. denied.* In *Thomas,* our Supreme Court listed three considerations to be applied in the exercise of this discretion:

i) whether the evidence will aid the jury in a proper consideration of the case,

ii) whether any party will be unduly prejudiced by the evidence, and

iii) whether the material may be improperly used by the jury.

*Thomas, supra.*

■ Here, the additional opportunity to hear the tapes may well have aided the jury. The tapes were long, difficult to understand, and played at the beginning of the trial. By listening to the tapes after the conclusion of all the evidence, the jurors may have been able to better perceive the tapes' content. Additionally, there is no evidence of prejudice to Bartruff resulting from the tapes, nor were the tapes subjected to improper use by the jury. Bartruff has demonstrated no abuse of discretion by the trial court, and thus, no error in this regard.

■ Bartruff further contends the trial court erred in failing to provide him with the opportunity to object to the jury's request for the tapes. While Bartruff should have been advised of the request before the tapes were played for the jury, such mistake does not constitute reversible error.

A conviction will not be reversed for an error which does not prejudice the substantial rights of the defendant. *Wells v. State* (1982), Ind., 441 N.E.2d 458, 463, *reh. denied; Johnson v. State* (1972), 257 Ind. 682, 278 N.E.2d 577, 582, *reh. denied.* Where there is legal and competent evidence supporting the court's conclusion, a judgment will not be reversed. *Batchelor, supra.*

Here, Bartruff fails to establish any prejudice resulting from this alleged error nor does our review of the record reveal any. The judgment is supported by substantial evidence having probative value. Thus, such error is harmless.

Bartruff also contends the bailiff's presence in the jury room was error because her presence impinged upon the secrecy of the jury, but fails to cite any authority from this jurisdiction to support this contention. An issue is preserved for review only if the argument is cogent and supported by citation to appropriate authority.

A.R. 8.3(A)(7). Unless so supported, the issue is waived. *Hutchison, supra; In Re Marriage of Lay, supra.*

Even if the issue had not been waived, Bartruff's contention would fail. A bailiff's conduct or acts must harm or prejudice a defendant's substantial rights to be considered error. *Widup v. State* (1967), 250 Ind. 1, 230 N.E.2d 767, 772. Here, Bartruff does not present, nor do we find, any evidence indicating the bailiff's presence or actions prejudiced him.

AFFIRMED.

MILLER and HOFFMAN, JJ., concur.