# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARK A. BATES**
Office of the Lake County Public Defender
Crown Point, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



**FILED**

Sep 04 2012, 12:37 pm

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NATHAN S. BERKMAN, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 45A04-1111-CR-583 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane R. Boswell, Judge
Cause No. 45G03-0906-MR-3

**September 4, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Nathan Berkman appeals from his conviction of and sentence for Felony Murder.[1] Berkman raises five issues, which we restate as follows:

I. Whether the trial court abused its discretion in denying Berkman's motion to dismiss, which was made on the basis that the instant charge was barred by prohibitions against double jeopardy;

II. Whether the trial court abused its discretion in denying Berkman's mistrial motion, which was made on the basis that the trial court abused its discretion in admitting certain testimony from a previous trial;

III. Whether the trial court abused its discretion in admitting certain deposition testimony; and

IV. Whether Berkman's sixty-year executed sentence is inappropriately harsh.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In August of 2008, Berkman owed approximately $2000 to Olen Hawkins, from whom he had frequently purchased cocaine. On August 30, 2008, Berkman telephoned Hawkins, told him that he had the money he owed him, and arranged a meeting in a supermarket parking lot. Between 4:00 and 5:00 p.m., Berkman told Arlene Timmerman, his girlfriend and with whom he lived, that was going to leave to obtain money and cocaine and that he had to go by himself. Berkman left at approximately 6:00 p.m., in Timmerman's car.

Berkman met Hawkins in the supermarket parking lot, parked next to him, and entered Hawkins's vehicle. When Hawkins asked Berkman if he had the money that he owed him, Berkman slit Hawkins's throat "from ear to ear and he robbed him for a couple ounces of

---

[1] Ind. Code § 35-42-1-1(2) (2008).

dope and a bunch of money." Tr. p. 1015. Berkman kicked Hawkins's dead body into the passenger seat and drove Hawkins's car back to Timmerman's house, arriving at approximately 9:30 to 10:00 p.m.

When Berkman arrived back at Timmerman's, he yelled for Timmerman. Timmerman went with Berkman to the garage, where she saw Hawkins's dead body in the passenger seat of his car. Berkman told Timmerman that he had cut Hawkins's throat and taken an ounce of cocaine from him. Berkman, Timmerman, and Tanya Sullivan, who was visiting, then smoked crack cocaine in the basement until approximately 1:30 or 2:00 a.m.

Late in the evening of August 31, 2008, or early in the morning of September 1, Berkman retrieved a knife from the kitchen, held it to Timmerman's neck, and said, "Get your f****** a** downstairs now." Tr. p. 517. Timmerman managed to elude Berkman, leave, and go to the home of friend Meghan Johnston. At approximately 7:00 or 8:00 a.m. on September 1, 2008, Timmerman called home, Berkman apologized, and Timmerman returned home. Berkman told her later that day that he had formulated a plan to dispose of Hawkins's body, which was still in Hawkins's car in the garage. Early in the morning of September 2, 2008, Berkman drove Hawkins's car to a field with Timmerman following in her car. While Timmerman waited, Berkman doused Hawkins's car with gasoline and set it aflame. Hawkins's burned-out car and remains were discovered on November 19, 2008.

On June 9, 2009, the State charged Berkman with murder and felony murder in the perpetration of robbery, both felonies. On July 27, 2011, a jury acquitted Berkman of murder but failed to reach a verdict on the felony murder count. On August 30, 2011, Berkman's

3

second jury trial began, in which he was charged with felony murder. During its case in chief, the State called Timmerman to testify. Soon thereafter, Timmerman indicated that she was "having an issue[,]" and trial was recessed. Tr. p. 463. When questioned by the trial court in chambers, Timmerman said that she was "very nauseous [and] burning up" and afraid that she might be developing a migraine. Tr. p. 466. The trial court determined that Timmerman was unable to testify and ruled that her testimony from the first trial could be read into the record.

Later in the trial, on September 7, 2011, the State indicated that it wished to introduce deposition testimony of Paul Barraza, testimony that had been read into the record in the first trial. The deposition of Barraza had been conducted by Berkman's attorney, and the State did not question Barraza during the deposition. The prosecutor indicated that his office gave Barraza's address and telephone number to an investigator but were unable to serve Barraza with a subpoena on August 8, 2011. The prosecutor also indicated that his office had been unable to contact Barraza via telephone, Barraza was subject to at least one open Lake County arrest warrant, and he believed Barraza to be in Florida avoiding the warrant. The trial court allowed the deposition to be read into the record. The jury found Berkman guilty as charged, and on October 3, 2011, the trial court sentenced him to sixty years of incarceration for felony murder.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Abused its Discretion in Denying Berkman's Motion to Dismiss

4

"On appeal, we will review a trial court's grant of a motion to dismiss an information for an abuse of discretion." *State v. Gill*, 949 N.E.2d 848, 849 (Ind. Ct. App. 2011) (citing *Zitlaw v. State*, 880 N.E.2d 724, 728 (Ind. Ct. App. 2008), *trans. denied*), *trans. denied*. "In reviewing a trial court's decision for an abuse of discretion, we reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id*. (citing *Zitlaw*, 880 N.E.2d at 728-29). Berkman contends that the trial court abused its discretion in denying his motion to dismiss, which was made on the basis that retrying him for felony murder after his acquittal for murder violated prohibitions against double jeopardy.

## A. *Richardson* Same Actual Evidence Test

Berkman contends that his retrial for felony murder violates Indiana's "actual evidence" test. In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), the Indiana Supreme Court held "that two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to … the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id*. at 49-50. The *Richardson* court stated the actual evidence test as follows:

> To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id*. at 53.

Berkman's *Richardson* claim must fail for the simple reason that he has been found

5

guilty of only one crime. *See, e.g.*, *Lee v. State*, 892 N.E.2d 1231, 1235 (Ind. 2008) ("Since

*Richardson*, this Court has decided several cases where there were separate facts to support

*two convictions*, but the case was presented in a way that left a reasonable possibility that the

jury used the same facts to establish both.") (second emphasis added). Because there is no

conviction other than the felony murder conviction, there is no other conviction that could

have been based on the jury's reliance on the same actual evidence used to establish the

elements of felony murder. Berkman's reliance on *Richardson* is unavailing.

## B. Collateral Estoppel

Berkman also contends that the State was barred from trying him again for felony

murder by the doctrine of collateral estoppel.

> Collateral estoppel, also known as issue-preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). Collateral estoppel is a component of the Fifth Amendment's double jeopardy protections. *Id.* at 445, 90 S.Ct. 1189. However, collateral estoppel "'will not often be available to a criminal defendant,' for 'it is not often possible to determine with precision how the judge or jury has decided any particular issue.'" 5 Wayne R. Lafave et al., *Criminal Procedure* § 17.4(a) (3d ed. 2007) (quoting Walter V. Schaefer, *Unresolved Issues in the Law of Double Jeopardy*: Waller and Ashe, 58 Cal. L. Rev. 391, 394 (1970)).

*Hoover v. State*, 918 N.E.2d 724, 734 (Ind. Ct. App. 2009), *trans. denied*.

Berkman contends that the issues litigated and disposed of in his favor in the first trial,

*i.e.*, that he did not murder Hawkins, preclude him from being tried subsequently for felony

murder. In order to convict a person of murder, the State is required to prove that he

"knowingly or intentionally kill[ed] another human being[,]" while a conviction for felony

6

murder may rest upon proof that he "kill[ed] another human being while committing or attempting to commit … robbery[.]" Ind. Code § 35-42-1-1(1); -1(2).

Based on the jury's murder acquittal and failure to reach a verdict on the felony murder charge in the first trial, the only issue of fact that we can say with certainty was litigated and decided against the State was that Berkman had not *knowingly or intentionally* killed Hawkins. Had the first jury found that Berkman had not killed Hawkins *at all*, it would have acquitted him of felony murder as well, instead of deadlocking on the charge. However, the State is not required to prove a knowing or intentional killing in order to sustain a felony murder conviction, only a killing–even an accidental one. In order to prevail on his collateral estoppel claim, Berkman must be able to firmly establish that the second jury impermissibly found that he had knowingly or intentionally killed Hawkins, which, on this record, he cannot do. Regardless of how the case was argued and evidence presented, we simply will not speculate regarding the jury's deliberations; it was permitted to find Berkman guilty of felony murder without making the impermissible finding that he knowingly or intentionally killed Hawkins, and we must presume that it did so.

## II. Whether the Trial Court Abused its Discretion in Denying Berkman's Mistrial Motion

Berkman contends that the trial court abused its discretion in denying his mistrial motion, which was made on the basis that the allegedly erroneous admission of Timmerman's testimony from his first trial placed him in grave peril to which he should not have been subjected.

We review a trial court's decision to deny a mistrial for abuse of

7

> discretion because the trial court is in "the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State*, 814 N.E.2d 253, 260 (Ind. 2004). A mistrial is appropriate only when the questioned conduct is "so prejudicial and inflammatory that [the defendant] was placed in a position of grave peril to which he should not have been subjected." *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001) (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989)). The gravity of the peril is measured by the conduct's probable persuasive effect on the jury. *Id*.

*Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008).

> When faced with a circumstance that a defendant believes might warrant mistrial,

> [g]enerally, the correct procedure is to request an admonishment. *See Brown v. State*, 572 N.E.2d 496, 498 (Ind. 1991). However, if counsel is not satisfied with the admonishment or it is obvious that the admonishment will not be sufficient to cure the error, counsel may then move for a mistrial. *See Dresser v. State*, 454 N.E.2d 406, 407-08 (Ind. 1983). [A] failure to request an admonishment or move for a mistrial results in waiver of the issue. *See Robinson v. State*, 693 N.E.2d 548, 552 (Ind. 1998).

*Etienne v. State*, 716 N.E.2d 457, 461 (Ind. 1999).

At the heart of Berkman's argument is his contention that Timmerman's previous trial testimony should not have been admitted. The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans. denied*. We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*. We may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005),

*trans. denied.* We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied.*

Prior testimony is hearsay, but Indiana Rule of Evidence 804 (2008) provides a hearsay exception for the prior testimony of a declarant who is "unavailable" as a witness. "'Unavailability of a witness' includes situations in which the declarant … is unable to be present or to testify at the hearing because of death or then existing physical or mental illness of infirmity[.]" Ind. Evidence Rule 804(a)(1). If a witness is declared unavailable,

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding [is admissible], if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Evid. R. 804(b)(1).

> The decision whether to invoke the rule allowing admission of prior recorded testimony is within the sound discretion of the trial court. *Moore v. State* (1982), Ind., 440 N.E.2d 1092, after remand, 467 N.E.2d 720. Before a witness' prior recorded testimony may be admitted in lieu of in court testimony, the prosecution must first show the declarant/witness is unavailable. *Iseton v. State* (1984), Ind. App., 472 N.E.2d 643, 648. It must also be determined whether there is sufficient identification of the parties and the issues between the former and present proceedings. *Spence v. State* (1979), 182 Ind. App. 62, 393 N.E.2d 277, 281. In *Spence*, this court states: "Absolute identity is not required, only sufficient identity to insure that cross-examination in the former case was directed to the issues presently relevant and that the former parties were the same in motive and interest." *Id.*

*Johnston v. State*, 517 N.E.2d 397, 399 (Ind. 1988).

### A. Timmerman's Unavailability

Berkman contends that the trial court abused its discretion in declaring Timmerman unavailable. Soon after beginning her testimony, Timmerman indicated that she was "having an issue[,]" and trial was recessed. Tr. p. 463. When questioned by the trial court in chambers, Timmerman said that she was "very nauseous [and] burning up[,]" she was afraid that she might be developing a migraine, and she had "thought [she] was going to throw up." Tr. pp. 466-67. Timmerman also indicated that she had been hospitalized from Wednesday to Saturday of the previous week, she had undergone testing for multiple sclerosis, and hospital personnel believed that she may have had a seizure or "possibly a stroke[.]" Tr. p. 466. After observing the witness, the trial court remarked that "I don't see how we're going to be able to continue with this. I'll get [Timmerman] the Tums [she requested], but it doesn't even seem possible to me." Tr. p. 468.

Under the circumstances of this case, we cannot conclude that the trial court abused its discretion in declaring Timmerman unavailable. The trial court questioned Timmerman, who complained of nausea and felt that she might be developing a migraine. Timmerman also indicated that she had very recently been hospitalized for four days, with medical personnel suspecting MS, seizure, or stroke as the cause of her symptoms. Most importantly, the trial court personally interviewed Timmerman and was able to observe her behavior, demeanor, and appearance, something we cannot do. Berkman has failed to establish that the trial court abused its discretion in declaring Timmerman unavailable due to present illness.

## B. Confrontation Rights

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all

10

criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]" Similarly, Article I, Section 13 of the Indiana Constitution provides, in part, that In all criminal prosecutions, the accused shall have the right … to meet the witnesses face to face[.]" Berkman argues that his right to confront witnesses against him was violated by the admission of Timmerman's prior testimony.

It is well-settled that the admission of prior testimony is constitutional provided certain requirements are met.

> In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Supreme Court held that the Confrontation Clause of the Sixth Amendment to the Federal Constitution prohibits admission in a criminal trial of testimonial statements by a person who is absent from trial, unless the person is unavailable and the defendant had a prior opportunity to cross-examine the person.

*Fowler v. State*, 829 N.E.2d 459, 464 (Ind. 2005). Moreover, the Indiana Supreme Court has held that the Indiana right to meet witnesses face-to-face "is secured where the testimony of a witness at a former hearing or trial on the same case is reproduced and admitted, where the defendant either cross-examined such witness or was afforded an opportunity to do so, and the witness cannot be brought to testify at trial again[.]" *Brady v. State*, 575 N.E.2d 981, 987 (Ind. 1991). As we have discussed, the trial court did not abuse its discretion in declaring Timmerman unavailable, and there is no dispute that Berkman cross-examined Timmerman during her prior testimony. Berkman's rights to confront the witnesses against him were not violated.

### III. Whether the Trial Court Abused its Discretion in Admitting Barraza's Deposition Testimony

11

Berkman contends that the trial court abused its discretion in admitting Barraza's deposition testimony. Berkman contends that the State failed to adequately show that Barraza was unavailable and that the deposition testimony should not have been admitted in any event because Berkman did not have an opportunity for cross-examination and did not have a similar motive when deposing Barraza.

## A. Barraza's Unavailability

Indiana Rule of Evidence 804(a) provides, in part, that "'[u]navailability as a witness' includes situations in which the declarant … is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process or other reasonable means."

> In several cases the United States Supreme Court has discussed the test for determining the unavailability of a witness. It stated a witness is not unavailable unless prosecutorial authorities make a *good-faith effort* to secure his presence at trial. *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S. Ct. 2531, 2543, 65 L. Ed. 2d 597; *Berger v. California* (1969), 393 U.S. 314, 315, 89 S. Ct. 540, 541, 21 L. Ed. 2d 508; *Barber v. Page* (1968), 390 U.S. 719, 88 S. Ct. 1318, 1322, 20 L. Ed. 2d 255. (Emphasis supplied). If no possibility of procuring the witness's attendance exists, "good faith" demands nothing of the prosecution; however, if there is even a remote possibility affirmative measures will be successful, good faith may demand their effectuation. *Ohio, supra*. The extent to which the prosecution must go to produce a witness is a question of reasonableness. *Id*.

*Bartruff v. State*, 528 N.E.2d 110, 113-14 (Ind. Ct. App. 1988).

As previously mentioned, the prosecutor indicated that his office had unsuccessfully attempted to serve Barraza with a subpoena on August 8, 2011, approximately one month before trial. The prosecutor also indicated that his office had been unable to contact Barraza

12

via telephone, that Barraza was subject to at least one open Lake County arrest warrant, and that he believed Barraza to be in Florida avoiding the warrant.

Under the circumstances of this case, we conclude that the State made a reasonable, good-faith effort to secure Barraza's presence at trial. Barraza failed to appear for two trials and had apparently fled the jurisdiction to avoid an arrest warrant. The State subpoenaed Barraza at his last known address and gave its investigator his last known address and telephone number, to no avail.

Whether the State could have secured Barraza had it put forth considerably more effort is speculative at best. Given that Barraza was already subject to at least one Lake County arrest warrant, there was no reason for the State to request a Lake County writ of body attachment.[2] Moreover, resort to the Uniform Act for Securing the Presence of Witnesses from Without a State in Criminal Proceedings ("the Act"), Ind. Code ch. 35-37-5 (2008), would almost certainly have been wasted effort, as there was no known address for Barraza. The Act provides for the subpoena or arrest of a witness in a foreign jurisdiction upon request of an Indiana trial court, but there is little point in attempting to subpoena or

---

[2] "When duly subpoenaed, the attendance of all witnesses may be enforced by attachment." Ind. Code § 35-37-5-2 (2008).

13

arrest a witness if his whereabouts are unknown, as was the case here.[3]  It should also be noted that Barraza, even if his whereabouts were known, had more incentive to ignore a subpoena than the typical reluctant witness, as he was subject to at least one arrest warrant. Finally, we cannot say that the State's failure to send an investigator to Florida was at all unreasonable, given that the record does not reflect the State had a possible address for Barraza in Florida.  Under the circumstances of this case, we cannot say that the State was required to do more than it did to secure Barraza.

## B.  Confrontation Rights

Berkman also contends that even if the State put forth a good faith effort to secure Barraza for trial, the admission of his deposition testimony violated his confrontation rights because he did not have an opportunity for adequate or effective cross-examination and because the deposition testimony was not developed with a similar motive.  As we have already noted, Evidence Rule 804 provides that prior testimony can be admitted if the party against whom the evidence is offered "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  Evid. R. 804(b)(1).

---

[3] *Bartruff*, 528 N.E.2d at 110, on which Berkman relies, is distinguishable. *Bartruff* addressed the adequacy of State efforts to secure the testimony of an out-of-state witness, and we stated that

> we believe the minimum required to show a good faith effort in this regard is evidence the prosecution filed a petition for the issuance of a subpoena under [the Act] and continuing reasonable attempts to procure the witness's attendance at trial before his deposition is admissible, even though the witness was subject to cross-examination when the deposition was taken.

*Id*. at 115.  Unlike here, however, it is clear from *Bartruff* that the precise whereabouts of the witness in question were known to the State.  Berkman's reliance on *Bartruff* is unavailing.

*1. Opportunity to Cross-Examine*

As previously mentioned, the confrontation requirements of both the Federal and Indiana Constitutions are met when a defendant either cross-examined the unavailable witness whose prior testimony the State seeks to admit or had the opportunity to do so. *Fowler*, 829 N.E.2d at 464; *Brady*, 575 N.E.2d at 987. Berkman notes that the State did not question Barraza during his deposition, arguing that this deprived him of the opportunity to cross-examine him. While this may be technically true, we conclude that the cross-examination requirement was nonetheless satisfied here, in spirit if not in word. As the Indiana Supreme Court has recognized, "the right to adequate and effective cross-examination is fundamental and essential to a fair trial [and] includes the right to ask pointed and relevant questions in an attempt to undermine the opposition's case, as well as the opportunity to test a witness's memory, perception and truthfulness." *State v. Owings*, 622 N.E.2d 948, 950 (Ind. 1993). At no point in Barraza's deposition, the reading of which spanned ninety-four pages in the transcript, is there the slightest indication that Berkman was denied the opportunity to attempt to undermine Barraza or his testimony by asking any questions he saw fit. To the extent that Berkman did not do so, it was not because he was denied the opportunity. Under the circumstances, we conclude that requirement for the opportunity to cross-examine was satisfied here.

*2. Similar Motive*

Berkman contends that his deposition of Barraza was performed for discovery purposes, with the goal of helping his trial counsel understand what Barraza's trial testimony

might be so that he might better advise Berkman. Berkman argues that this difference in motive did not afford an opportunity for effective cross-examination. We cannot agree. Even if the primary motive of a discovery deposition in a criminal case is to obtain a preview of a witness's testimony, this certainly does not exclude the need to understand how the witness's story and credibility might be attacked. We believe that a prudent defense attorney conducting a discovery deposition in a criminal case would not only attempt to ascertain what the substance of the testimony might be but also explore avenues by which the testimony or the witness's credibility might be attacked. Indeed, Berkman's trial counsel did just that, spending considerable time during the deposition impeaching Barraza with prior criminal convictions and arrests and also exploring his motive for approaching the authorities regarding Berkman's confession.

Berkman's trial counsel questioned Barraza at great length regarding his criminal history, eliciting responses indicating that Barraza had been arrested thirteen times; had been first incarcerated between the ages of nine and eleven; and had "four or five" felony convictions, including for "[a] couple batteries[,]" dealing in cocaine, and theft. Tr. p. 952. It is worth noting that most, if not all, of this could have been ruled inadmissible for impeachment purposes at trial, with the possible exception of Barraza's theft conviction. Pursuant to Evidence Rule 609, evidence of a prior conviction is only admissible for impeachment purposes if the conviction is for "murder, treason, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or … a crime involving dishonesty or false statement." Theft is considered to be a crime of dishonesty and would therefore have been

admissible for impeachment purposes, assuming the other requirements of Evidence Rule 609 were met. *See Rowe v. State*, 704 N.E.2d 1104, 1108 (Ind. Ct. App. 1999) ("Hodges' Burglary and Theft convictions would both have been admissible as crimes which involve dishonesty and reflect upon a witness' credibility for truth and veracity."), *trans. denied*.

As for Barraza's motive for coming forward, Berkman's trial counsel asked him whether he hoped to receive help from the State in pending criminal cases and to explain why he "would rat out a fellow inmate like this." Tr. p. 1032. Berkman does not explain how he was prevented from pursuing any of these lines of questioning fully or how they would have been pursued any differently at trial. We conclude that the motive for the discovery deposition, as well as how the deposition actually played out, was similar enough to that of trial testimony to satisfy the requirements of Evidence Rule 804(b)(1).

We decline to adopt the Florida rule that the use of discovery depositions during a criminal trial does not satisfy constitutional confrontation requirements. In *State v. Lopez*, 974 So. 2d 340 (Fla. 2008), the Florida Supreme Court held that

> the exercise of the right to take a discovery deposition under rule 3.220 does not serve as the functional substitute of in-court confrontation of the witness because the defendant is usually prohibited from being present, the motivation for the deposition does not result in the "equivalent of significant cross-examination," and the resulting deposition cannot be admitted as substantive evidence at trial.

*Id*. at 350. The first and third reasons identified simply do not apply, as Indiana law does not seem to prohibit a defendant's attendance at discovery depositions and does not prohibit the use of depositions from unavailable persons as substantive evidence. *See* Ind. Trial Rule

17

32(A)(3). Also, we must respectfully disagree with the Florida Supreme Court's second reason, as we have already concluded that the motive for a discovery deposition in a criminal case is close enough to that driving a defendant's approach to trial testimony to satisfy the requirements of Evidence Rule 804(b)(1). The trial court did not abuse its discretion in admitting Barraza's deposition testimony.

### IV. Whether Berkman's Sentence is Inappropriate

We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). The trial court sentenced Berkman to sixty years of incarceration.

The nature of Berkman's offense was quite egregious. Berkman lured Hawkins to a

18

meeting place with a promise of paying him the money he owed him, only to kill and rob him instead. After keeping Hawkins's decomposing corpse in Timmerman's garage for three days, Berkman drove Hawkins's car to an isolated location and set it aflame. Berkman's offense was premeditated, and Hawkins died for no better reason than Berkman owed him $2000 that he did not wish to repay. The nature of Berkman's offense justifies a lengthy sentence.

As for Berkman's character, it also justifies a lengthy sentence. While Berkman's criminal history is not extensive, he has a 2006 battery conviction and a 2009 theft conviction, for which he was on probation when he committed the instant offense. In the course of three years, Berkman progressed from relatively minor crimes to felony murder, which certainly does not speak well of his character. Berkman's actions following his offense at issue are, to be blunt, disturbing. Immediately after the killing, Berkman returned home and smoked crack cocaine for several hours, and then, over the course of the next three days, went on a binge, "f****** part[ying] and s***, smoking crack and stay[ing] f***** up." Tr. p. 1015. Berkman also held a knife to Timmerman's throat and on another occasion choked her while laughing and saying, "Oh, I could kill you." Tr. p. 573. There is also some indication that after Berkman's arrest he made some attempts to "get her [and] make her pay" for speaking with police. Tr. p. 1021. After allowing Hawkins's body to decompose for three days in Timmerman's garage, Berkman disposed of it in an isolated area by burning it, preventing Hawkins's wife from knowing her husband's fate for several more months. In light of the nature of his offense and his character, Berkman has failed to establish that his

19

sixty-year sentence for felony murder is inappropriate.

We affirm the judgment of the trial court.

ROBB, C.J., and BAKER, J., concur.