## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2016, 9:06 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Marce Gonzalez, Jr.
Dyer, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Duriel Jareau Williams,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

March 9, 2016

Court of Appeals Case No.
45A03-1507-CR-927

Appeal from the Lake Superior Court

The Honorable Samuel L. Cappas, Judge

Trial Court Cause No.
45G04-1302-MR-2

**Brown, Judge.**

[1] Duriel Jareau Williams appeals his conviction for murder. Williams raises one issue, which we revise and restate as whether the trial court abused its discretion in admitting certain former testimony pursuant to Ind. Evidence Rule 804. We affirm.

## Facts and Procedural History

[2] On January 28, 2013, Erich Beard was shot and killed in Lake County, Indiana. Prior to the shooting, Brandi Phillips, who had previously dated Williams, had been traveling around in Gary in Beard's truck with Beard, Williams, and another woman. Phillips was present when Williams and Beard exited the truck and Williams pointed a gun at Beard and shot him three or four times. At some point after the shooting, Phillips was riding in a car with her aunt and saw Williams, who entered the car and told Phillips that she "better not have ran [her] mouth." Transcript at 385. Police later contacted Phillips and showed her a photographic array, and Phillips identified a person in the array as Williams but refused to sign it.

[3] On February 12, 2013, the State charged Williams with the murder of Beard. On April 23, 2013, Williams filed a Petition to Let to Bail arguing that the proof was not evident and the evidence was not strong, and the matter was referred to a magistrate for a hearing scheduled for May 28, 2013. On May 28, 2013, Williams filed a motion to continue the bail hearing, which the court granted in part and denied in part, stating: "The State of Indiana indicates there is one witness that has been properly served to be here. That testimony will need to be taken today. The remainder of the hearing will be continued. The new date

will be coordinated with the magistrate." Appellant's Appendix at 52. Phillips testified before Magistrate Natalie Bokota that she was afraid to testify but that she was present when Williams shot Beard. Phillips was questioned by the State and Williams's defense counsel, attorney Roseann Ivanovich. The hearing on the petition to let to bail was ultimately continued indefinitely on Williams's motion.

[4] A jury trial began on May 4, 2015, before Judge Samuel Cappas. At trial, Williams was represented by attorney John Maksimovich. As a preliminary matter prior to jury selection, the State informed the trial court that it had not been successful in securing Phillips's presence as a witness at trial and had requested a writ of body attachment for her arrest. Specifically, the prosecutor stated:

> Your Honor, the State filed a Verified Motion For Writ of Body Attachment, to summarize what the State of Indiana has done. The State of Indiana has attempted to serve Brandi Phillips, an eyewitness to the alleged crime in this case with a subpoena and I have the investigator here that did this, but he is available to testify if the Court wants to hear from him. But I will summarize what the State has done. We had the Investigator Adams serve Brandi Phillips at her address, which is listed in the Verified Motion as on Burr Street, in Gary, Indiana. He left a copy at her address. He certified mailed a copy and regular mailed a copy. In addition to that, Adams went to her parents [sic] home located on Garfield Street in Gary, Indiana, left a copy of the subpoena for Brandi Phillips with her dad, also certified and regular mailed to that address as well. The State did receive back, the green card from the certification from the Garfield Street address which, to the State's knowledge the only --- I'm sorry, Brandi Phillips' mother lives at that address, her name is Brenda. The signature

on the certified, although hard to read, looks more to the State that it would be the Brandi Phillips that signed it, rather than Brenda Phillips, but we do know at this point that she has been served at both addresses in all manners possible with a subpoena and that at least someone at the Garfield Street address signed for that subpoena. Wallace Adams, from our office, spoke with both her mother and her father regarding the subpoena and her need to be here today to testify. Myself, Miss Gonzalez and Detective Stout also went to her apartment and to her parents [sic] residence and spoke with her father about the subpoena and her need to be here to testify today. No one has heard from her after all of our efforts to attempt to locate her and because of that, we are asking that the Court grant our Motion and issue a Writ of Body Attachment for her arrest.

Transcript at 3-5. Williams stated he had no objection. The court granted the State's request and ordered a warrant for Phillips's arrest.

[5]     On the third day of trial, the State informed the court that it had been unable to locate Phillips. Specifically, the prosecutor stated:

Your Honor, the State of Indiana has made diligent efforts to locate Brandi Phillips, one of our witnesses. She has been served by leaving a copy at her address, certified mail, regular mail. Same process at her parents' residence. Wallace Adams from our office had spoken to your [sic] parents about her need to appear here. Myself, Miss Gonzalez, and Lieutenant Stout spoke with her dad about her need to be here and attempted to locate her at her last known residence.

In addition to that, since we -- the Court issued the Writ of Body Attachment on Monday, officers from the Gary Police Department have been attempting to locate her. In fact, attempted to locate her again last night with a group from the

department that does such things as try to locate missing witnesses and suspects and people of that nature.

I have checked the jail list. She has not been arrested by another agency. Therefore at this point, the State of Indiana believes that under 80 -- evidence Rule 804([a])(5) she is unavailable. And we will be requesting to read in her transcript from the Petition to Let Bail Hearing, at which the defendant was represented by Miss Ivanovich and had the opportunity to question Miss Phillips. And he was present for that hearing as well.

*Id.* at 290-291.

[6] Williams's counsel objected to the admission of Phillips's testimony. He argued that Phillips was not truly unavailable and noted that a green certified mail ticket had been signed on a date around April 18th. He argued that the police officers who attempted to locate Phillips should come to court and tell the court about their efforts to locate her and that, without the officers' testimony, it could not be determined that she was unavailable. Williams's counsel further argued that the bail hearing was held before Magistrate Bokota rather than Judge Cappas and that Williams had been represented by different counsel at the bail hearing. He also argued that the issue at the bail hearing was different than the issue at trial, that at the bail hearing the issue was whether Williams's liberty should be restrained, that at trial the issue is whether Williams in fact committed the criminal offense, and that the penalty at trial is much more severe. In response, the State argued that the evidence rules do not require that it bring in the officers who looked for Phillips, that the State's representations as to those efforts are satisfactory, the motive to develop

testimony is not required to be the same but is required to be similar, it more than established that Phillips was unavailable, and that it is irrelevant whether defense counsel or the trial judge was at the bail hearing. The court overruled Williams's objection and admitted the testimony of Phillips from Williams's bail hearing. The jury found Williams guilty of murder on May 6, 2015, and the court sentenced him to sixty-five years.

### *Discussion*

The issue is whether the trial court abused its discretion in admitting the former testimony of Phillips. The admissibility of evidence is within the sound discretion of the trial court. *Berkman v. State*, 976 N.E.2d 68, 74 (Ind. Ct. App. 2012), *trans. denied*, *cert. denied*, 134 S. Ct. 155 (2013). We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

Williams asserts that the court abused its discretion in admitting into evidence at trial the testimony Phillips had provided at his bail hearing. He notes that his trial counsel objected to the admission of Phillips's prior testimony on the grounds that the issue at the bail hearing was different than the issue at trial and that the penalty after trial is more severe, and he notes that his trial counsel was not the attorney who represented him at the bail hearing. He contends that "the tactical and practical reasons may be critically distinct as to cross-examination of a witness at the very beginning of a criminal case when evidence is presented

solely to a judge or magistrate, as opposed to the trial and presentment of evidence before a jury" and that "a factual inquiry should be required in criminal cases where [Evidence] Rule 804(b)(1) is invoked." Appellant's Brief at 9-10. He argues that the State's efforts to procure the attendance of Phillips at his trial were insufficient to satisfy a reasonableness standard in a murder prosecution. He also asserts that "[o]ur current jurisprudence places defense counsel in the clairvoyant position of electing whether to forego discovery depositions and petition to set bail hearings to protect a defendant from future unavailability claims." Appellant's Reply Brief at 2.

[9] The State maintains that the court did not abuse its discretion in finding that Phillips was unavailable as the State was unable to procure her attendance by reasonable means and that Williams had the incentive and opportunity to cross-examine Phillips at the time she gave her sworn testimony at the bail hearing. The State argues that the context of a bail hearing in a murder case creates an obvious incentive to challenge testimony that would be inculpatory if offered at trial, that Williams's counsel questioned Phillips at length at the bail hearing, that the substitution of defense counsel did not create lack of identity in interest, and that any error in admitting Phillips's prior testimony was harmless given the other evidence presented at trial.

[10] Ind. Evidence Rule 804(b) provides in part:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.
>
> (1)    *Former Testimony*.  Testimony that:

(A)    was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B)    is now offered against a party who had – or, in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

[11]    Ind. Evidence Rule 804(a) provides in part:

A declarant is considered to be unavailable as a witness if the declarant:

* * * * *

(5)    is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

(A)    the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) . . . .

[12]    A witness is not unavailable unless prosecutorial authorities make a good-faith effort to secure his presence at trial. *Berkman*, 976 N.E.2d at 76 (citations omitted). "If no possibility of procuring the witness's attendance exists, 'good faith' demands nothing of the prosecution; however, if there is even a remote possibility affirmative measures will be successful, good faith may demand their effectuation." *Id.* (citation omitted). "The extent to which the prosecution must go to produce a witness is a question of reasonableness." *Id.*

[13]    "The decision whether to invoke the rule allowing admission of prior recorded testimony is within the sound discretion of the trial court." *Davis v. State*, 13

N.E.3d 939, 946 (Ind. Ct. App. 2014) (citing *Berkman*, 976 N.E.2d at 74 (quoting *Johnston v. State*, 517 N.E.2d 397, 399 (Ind. 1988))), *trans. denied*.

[14]   In *Berkman*, the defendant asserted the trial court abused its discretion in admitting the deposition testimony of Paul Barraza, that the State had failed to adequately show that Barraza was unavailable, and that the deposition testimony should not have been admitted because Berkman did not have an opportunity for cross-examination and did not have a similar motive when deposing Barraza.  976 N.E.2d at 76.  When seeking to introduce Barraza's deposition testimony, the prosecutor stated that his office gave Barraza's address and telephone number to an investigator who was unable to serve Barraza with a subpoena, that his office had been unable to contact Barraza by telephone, that Barraza was subject to at least one open arrest warrant, and that the prosecutor believed Barraza to be in Florida avoiding the warrant.  *Id.* at 72.  This court concluded, with respect to Barraza's unavailability, that the State had made a reasonable, good-faith effort to secure Barraza's presence at trial. *Id.* at 76.  We noted that Barraza had failed to appear for two trials, that the State had subpoenaed Barraza at his last known address and had given its investigator his last known address and telephone number to no avail, that "[w]hether the State could have secured Barraza had it put forth considerably more effort is speculative at best," and that "[g]iven that Barraza was already subject to at least one [] arrest warrant, there was no reason for the State to request a [] writ of body attachment."  *Id.* at 76-77.

[15] We further noted, with respect to whether the defendant had an opportunity for adequate or effective cross-examination, that at no point in Barraza's deposition, the reading of which spanned ninety-four pages in the transcript, was there the slightest indication that the defendant was denied the opportunity to attempt to undermine Barraza or his testimony by asking any questions he saw fit. *Id.* at 77-78. As to whether the deposition testimony was developed with a similar motive, we found that, even if the primary motive of a discovery deposition is to obtain a preview of a witness's testimony, this does not exclude the need to understand how the witness's story and credibility might be attacked, that a prudent defense attorney would explore such avenues, and that the defendant's counsel did just that by spending considerable time impeaching Barraza and exploring his motive. *Id.* at 78. We further noted that the defendant's counsel questioned Barraza at length and that the defendant did not explain how he was prevented from pursuing lines of questioning fully or how they would have been pursued any differently at trial. *Id.* We concluded that the motive for the discovery deposition, as well as how the deposition actually played out, was similar enough to that of trial testimony to satisfy the requirements of Evidence Rule 804(b)(1), and held that the trial court did not abuse its discretion in admitting Barraza's former testimony. *Id.* at 78-79.

### A. Phillips's Unavailability

[16] With respect to Phillips's unavailability, we observe that, on the first day of trial, the deputy prosecutor informed the court that Investigator Adams had attempted to serve Phillips with a subpoena at her address, that he had left a

copy at her address, and that he had mailed a copy to her by certified mailed and by regular mail. The prosecutor also informed the court that Investigator Adams had visited the home of Phillips's parents, left a copy of the subpoena for Phillips with her father, and that he also mailed a copy of the subpoena to the address of Phillips's parents by certified mail and regular mail. The prosecutor further explained that the State received notification that a person had signed for the copy of the subpoena sent to the address of Phillips's parents by certified mail, but that it was not clear whether the signature belonged to Phillips or to her mother. The prosecutor also stated that Investigator Adams had spoken with both Phillips's mother and father regarding the subpoena and the need for Phillips to be present to testify at trial. Finally, the prosecutor informed the court that she, along with another deputy prosecutor and Gary Police Lieutenant Delmar Stout, visited Phillips's apartment and her parents' residence and spoke with her father about the subpoena and the need for Phillips to be present to testify at trial. The State requested a writ of body attachment for the arrest of Phillips, which the court granted.

[17] On the third day of trial, the deputy prosecutor informed the court that it had been unable to locate Phillips, stating that, since the court had issued the writ of body attachment, officers from the Gary Police Department had been attempting to locate her and that a group within the department had attempted to locate her again the previous night and were unsuccessful. The prosecutor also noted that she checked the jail list and that Phillips had not been arrested by another agency.

[18] We conclude that the State made reasonable, good-faith efforts to secure the presence of Phillips for Williams's trial. The State had subpoenaed Phillips at the addresses known to it, requested the court issue an order for her arrest, had law enforcement attempt to locate her, visited her parents' residence, and checked to see if she had been arrested by another agency. Whether the State could have secured her presence had it put forth additional effort is speculative. We cannot say that, under the circumstances, the State was required to take additional steps to secure Phillips. *See Berkman*, 976 N.E.2d at 76-77 (holding the State was not required to do more than it did to secure Barraza); *see also Davis*, 13 N.E.3d at 945-946 (noting the repeated efforts of the State to bring two witnesses to court and holding the witnesses were unavailable under Evidence Rule 804). Additionally, the court was permitted to rely upon the information provided by the deputy prosecutor in determining that Phillips was unavailable for purposes of Evidence Rule 804(a). *See Berkman*, 976 N.E.2d at 76-77 (the trial court relied on the statements of the prosecutor regarding the State's efforts to locate Barraza). The State demonstrated that Phillips was unavailable as a witness under Ind. Evidence Rule 804(a). *See Tiller v. State*, 896 N.E.2d 537, 543-544 (Ind. Ct. App. 2008) (noting that the State explained its efforts to secure a witness's attendance, which included contact and attempted contact by the prosecutor, service by subpoena, and the attempt of a detective to locate the witness, and noting that on the first day of trial the court granted the State's motion for a writ of body attachment and the witness never appeared, and holding that the State's efforts in securing the witness's appearance at trial

were reasonable and the witness's former deposition testimony was properly admitted under Ind. Evidence Rule 804(a)(5) and (b)(1)), *reh'g denied*.

### B. Opportunity for Adequate Examination

[19] We next turn to Williams's assertions that he was denied the opportunity for an adequate or effective examination of Phillips and that his motive for questioning Phillips at the bail hearing was not similar to his motive to question her at his trial. The Indiana Supreme Court has stated that "the right to adequate and effective cross-examination is fundamental and essential to a fair trial [and] includes the right to ask pointed and relevant questions in an attempt to undermine the opposition's case, as well as the opportunity to test a witness's memory, perception and truthfulness." *State v. Owings*, 622 N.E.2d 948, 950 (Ind. 1993); *see also Berkman*, 976 N.E.2d at 77. "Murder . . . shall not be bailable, when the proof is evident, or the presumption strong." Ind. Const. art. 1, § 17. The Indiana Supreme Court has held that, "as a general rule, murder . . . shall not be bailable, *except* in either one of two cases: 1st. When the proof is not evident; 2d. When the presumption is not strong." *Fry v. State*, 990 N.E.2d 429, 434-435 (Ind. 2013) (citation and internal quotation marks omitted).

[20] While Williams may have questioned Phillips at the bail hearing with the goal of showing that the proof of his guilt was not evident and the presumption not strong, in order to prevail on his petition to let bail it was necessary for him to challenge the accuracy of Phillips's testimony or undermine her credibility. At no point during Phillips's testimony at the bail hearing, the reading of which spanned about seventy-four pages in the transcript, is there any indication that

Williams was not provided the opportunity to challenge her testimony and credibility. His counsel devoted significant time to questioning Phillips regarding her observations of the events of January 28, 2013. In particular, counsel thoroughly questioned Phillips regarding her relationships with Williams, Beard, and the other passenger; the actions, demeanor, and behavior of Williams and Beard prior to the shooting; her distance from Williams and Beard at the time of the shooting and her ability to observe their interactions and Williams's actions; and her interaction with Williams and the police following the shooting. Williams does not explain how he was prevented from questioning Phillips fully or how his questioning would have been pursued differently at trial. Williams's motive at the bail hearing, in light of our review of Phillips's testimony as a whole and the questioning of her by Williams's counsel, was sufficiently similar to that of trial testimony to satisfy the requirements of Evidence Rule 804(b)(1). *See Berkman*, 976 N.E.2d at 78 (noting the defendant did not explain how he was prevented from pursuing lines of questioning fully or how they would have been pursued any differently at trial and holding "that the motive for the discovery deposition, as well as how the deposition actually played out, was similar enough to that of trial testimony to satisfy the requirements of Evidence Rule 804(b)(1)"). Williams was provided the opportunity for an adequate and effective examination of Phillips.

## *Conclusion*

Based upon our review of the record, we conclude that the trial court did not abuse its discretion in admitting Phillips's testimony from the May 28, 2013 bail hearing into evidence at Williams's trial. For the foregoing reasons, we affirm Williams's conviction for murder.

Affirmed.

Kirsch, J., and Mathias, J., concur.