## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 14 2016, 5:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronald Eric McMahan, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 14, 2016 <br><br> Court of Appeals Case No. <br> 45A03-1507-CR-1037 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Salvador Vasquez, Judge <br><br> Trial Court Cause No. <br> 45G01-1412-MR-10 |

**Robb, Judge.**

# Case Summary and Issue

[1] Ronald E. McMahan appeals his convictions for three counts of attempted robbery and murder in the perpetration of a felony ("felony murder"), arguing the evidence is insufficient to support his convictions. Concluding the evidence is sufficient, we affirm.

# Facts and Procedural History

[2] On December 3, 2014, Anthony Villarreal exchanged text messages with McMahan and agreed to help McMahan purchase marijuana because McMahan's dealer was out of town. Although Villarreal had previously purchased marijuana from McMahan, Villarreal did not know McMahan's name, only his cell phone number.

[3] Villarreal and McMahan arranged to meet at a gas station in Gary, Indiana, where they had previously conducted marijuana deals. Villarreal, acting as a middleman, was to collect McMahan's money, purchase the marijuana, and bring it back to McMahan. McMahan asked if Villarreal would be bringing friends or guns to the deal. Villarreal informed McMahan that he would be bringing "protection" to the deal, meaning other people. Transcript at 239. Villarreal also implied he would be carrying a gun. In response, McMahan expressed an interest in purchasing the gun from Villarreal, offering up to $450 for a gun Villarreal said he purchased for $200. Villarreal, who did not really own a gun, said he liked his gun, but promised to inquire about a gun purchase on McMahan's behalf another time.

[4] On the way to the deal, Villarreal picked up his girlfriend, A.S., as well as his friends Michael Warden and Denis Haluska. The group smoked marijuana and headed to the gas station to meet McMahan. McMahan, accompanied by JaJuan Harris, arrived late, on foot, and informed Villarreal that they needed a ride to their house to get the rest of the money for the deal. Villarreal agreed and the two piled in the backseat.

[5] McMahan and Harris directed Villarreal to a dead end street with a house on one side and a wooded area on the other. Villarreal pulled into the driveway of the house. Unknown to Villarreal, neither McMahan nor Harris lived there. McMahan and Harris exited the car and walked around the side of the house. At Warden and Haluska's urging, Villarreal turned the car around so he could easily drive away if necessary. McMahan and Harris returned shortly thereafter, and A.S. opened the passenger-side door to let them back into the car. McMahan approached the passenger side of the car, brandished a gun, and demanded guns and money. Harris went to the driver's side of the vehicle and held a gun in Villarreal's face. Villarreal pushed his arm away and hit the gas as several shots were fired.

[6] Villarreal, Warden, and Haluska quickly realized that A.S. was wounded in the neck. They called 911 and drove to the McDonald's in Hammond, Indiana, while trying to stop the bleeding; however, A.S. died on the scene from rapid blood loss. The bullet passed through her neck from right to left at a downward angle.

[7] Upon arrival at the McDonald's, police observed that Villarreal, Warden, and Haluska were extremely frightened and covered in blood. Police questioned them separately, and each provided basically the same account of the circumstances leading to A.S.'s death. Villarreal gave police McMahan's phone number, which they used to find McMahan. Police searched the apartment where McMahan lived and found a revolver. Using a bullet recovered from A.S.'s collar bone, the revolver could not definitively be identified as the gun used to shoot A.S., nor could it be excluded. Warden and Haluska each identified McMahan from a photo lineup as the shooter on A.S.'s side of the vehicle. McMahan initially denied everything, but ultimately admitted to firing at the vehicle. However, he placed himself on the driver's side and Harris on A.S.'s side of the vehicle.

[8] The State charged McMahan with murder, felony murder, and four counts of attempted robbery as Level 2 felonies. Following a jury trial, McMahan was found guilty of all charges. His motion for judgment notwithstanding the verdict was denied. At the sentencing hearing, the trial court entered judgment of conviction on the felony murder count and on three counts of attempted robbery and sentenced McMahan to sixty-three years in the Indiana Department of Correction. He now appeals his convictions.

# Discussion and Decision

## I. Standard of Review

"When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict." *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* We will not reweigh the evidence or assess the credibility of the witnesses. *Glenn v. State*, 999 N.E.2d 859, 861 (Ind. Ct. App. 2013). "The conviction will be affirmed unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (citation and internal quotations marks omitted).

## II. Attempted Robbery

Under Indiana law, "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a). Robbery is committed when a person "knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on another person; or (2) by putting any person in fear . . . ." Ind. Code § 35-42-5-1. A person engages in conduct knowingly when "he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). A person engages in conduct intentionally when "it is his conscious objective to do so." Ind. Code § 35-41-2-2(a).

Here, McMahan took a substantial step toward intentionally taking property from the victims through the use of force. McMahan arranged to meet Villarreal to purchase marijuana, met Villareal and his friends at the gas station, and led the group to a house on a dead-end street abutting a wooded area under the false pretext that he lived there. He pointed a gun at the occupants of the car and demanded their guns and money. Although McMahan claimed in his statement to police—which was played for the jury—that it was Villarreal who attempted to rob him, three witnesses said the opposite at trial, and the jury found the latter witnesses' accounts more credible. In reviewing the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses, and we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005) (citation omitted). Therefore, we hold the evidence was sufficient to support the jury's verdict that McMahan intended to commit robbery and engaged in conduct that constituted a substantial step toward commission of the crime.

## III. Felony Murder

Murder is committed by a person who "knowingly or intentionally kills another human being" or who "kills another human being while committing or attempting to commit . . . robbery . . . ." Ind. Code § 35-42-1-1(1), (2). McMahan was charged with both murder and felony murder under this statute and the jury found McMahan guilty of both counts. The trial court entered judgment of conviction for felony murder only.

McMahan argues there is insufficient evidence that he knowingly or intentionally killed A.S.; however, a felony murder conviction requires proof of intent to commit the underlying felony (in this case, attempted robbery), but not proof of intent to kill. *See Luna v. State*, 758 N.E.2d 515, 517 (Ind. 2001). "[T]he State is not required to prove a knowing or intentional killing in order to sustain a felony murder conviction, only a killing—even an accidental one." *Berkman v. State*, 976 N.E.2d 68, 73 (Ind. Ct. App. 2012), *trans. denied*, *cert. denied*, 134 S. Ct. 155 (2013). Because there is sufficient evidence to support the jury's verdict that McMahan intentionally committed attempted robbery, and because A.S. was killed in the attempt, his conviction for felony murder is also supported by sufficient evidence.

# Conclusion

Concluding there was sufficient evidence to support McMahan's convictions for felony murder and three counts of attempted robbery, we affirm.

Affirmed.

Barnes, J., and Altice, J., concur.